: L E D

10 AUG 30 PH 3: 18

.... H S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                    ᴺᵁᴾ DEPUTY

1  **Billie Jean Ford**
2  30 Spinnaker Way
   Coronado, CA  92118
3  Pro Se, Plaintiff

4       IN THE UNITED STATES DISTRICT COURT
5          SOUTHERN DISTRICT OF CALIFORNIA
6                **San Diego Division**

7

8    **BILLIE JEAN FORD**                    **CIVIL ACTION**
9          **Plaintiff,**
                                     **FILE NO.:** *10cv1660-WQH-NLS*
10
         **V**                      *Ammended*
11                                  **COMPLAINT SEEKING:**
12   **CENLAR AGENCY, INC., a/k/a     EMERGENCY TEMPORARY
       CENLAR;**                          RESTRAINING
13                                   ORDER/PRELIMINARY
14   **OCWEN LOAN SERVICING LLC,          INJUNCTION;**
       a/k/a:  OCWEN;**
15                                  **MONETARY DAMAGES;**
16   **MORTGAGE ELECTRONIC          STATUTORY DAMAGES;**
     **REGISTRATION SYSTEMS, INC, a/k/a/:   PUNITIVE DAMAGES;**
17        **MERS,**
                                     **INJUNCTIVE RELIEF;**
18       **Defendants**
19                                  **DECLARATORY RELIEF**
20
21  _____|   **JURY TRIAL DEMANDED**
22
23  __VERIFIED COMPLAINT SEEKING EMERGENCY RELIEF AND DAMAGES__
24       COMES NOW, Billie Jean Ford Plaintiff, and files her *Complaint* against the
25  above named defendants.  Plaintiff, seeks from this Court, an *Emergency Temporary*
26
27

28                   Original Complaint 1

*Restraining Order/Preliminary Injunction[1]* to preserve the *status quo ante*.

Further, Plaintiff seeks from the above named Defendants, damages resulting from the violations of several Federal and state laws, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §2607 et seg. and the implementing Regulation X ("Reg. X"); the Truth in Lending Act ("TILA"), 15 U.S.C. §1601 et seg. and the implementing Regulation Z ("Reg. Z"); the Federal Mail Fraud Act, 18 U.S.C § 1341 (the "Mail Fraud Act"); the Federal Wire Act, 18 U.S.C. § 1343 (the "Wire Act"); Bank Fraud 18 U.S.C. §§ 1010, 1014, 1344 ("Bank Fraud"); and other state common law causes of action for Actual Fraud, Constructive Fraud, Fraud in the Inducement, Fraud in the Factum, Fraud in the Execution, Breach of Contract, Gross Negligence, Lender Negligence, Willful and Reckless Negligence, Negligent Acceptance, Negligent Training, Conspiracy, and others.

The broker for Plaintiff's rental properties located in Mobile, Alabama was Home Mortgages Corporation (HMC). The original lender/servicer, for Plaintiff's four rental properties, Taylor, Bean & Whitaker, closed their doors, August 5, 2009, and entered into bankruptcy protection.

Since the time of Taylor, Bean & Whitaker's bankruptcy, both Cenlar, and Ocwen have claimed to be the legitimate and current servicer, although neither Cenlar, nor Ocwen have supplied any evidence to support their claims.

---

[1] Plaintiff is filing, contemporaneously herewith, *Verified Brief In Support of Temporary Restraining Order/Preliminary Injunction*.

Having been refused all information and documentation by both Cenlar and Ocwen; and having tried, unsuccessfully, to work with either one and/or both of the servicers, to no avail; Plaintiff sent Qualified Written Requests (QWRs) beginning November 3, 2009 to Cenlar, which was mailed via Certified, Return Receipt; to which a responsive letter dated November 27, 2009; signed by Deborah Werline, Quality Control Coordinator, confirming transfer from Taylor, Bean & Whitaker.

Ms. Werline did state in the letter, that Cenlar did not get original loan documents from TB&W as requested in the QWR. It must be further noted that none of the requests in the QWR were complied with. *"Exhibit A"*

A QWR was sent to Ocwen on December 28, 2009, signed for by K. Ambler *"Exhibit A-2"*. Having gotten no response from the first QWR, Plaintiff sent the second QWR on January 27, 2010;  Ocwen sent a letter in response to one of the QWRs on April 1, 2010 stating that they needed sixty (60) days in order to fully comply with the request *"Exhibit B"*.  Without responding any further, and in direct violation of RESPA, Ocwen proceeded with Sale Under Power as shown by the letters of June 11, 2010 *"Exhibit C."*

This complaint shows that Ocwen elected a non-judicial sale when the required elements of such an election do not exist. Plaintiff objects to the sale, and Ocwen in fact has/had no right to sell the property/properties. Should the properties in fact be in securitization, the documents will show a complexity far beyond the complexity of

Original Complaint 3

even highly complex, commercial real estate transactions which the legislature as mandated can ONLY be resolved by Judicial foreclosure.

Ocwen has and intends to execute on the Power of Sale in the security instrument WITHOUT going through the judicial foreclosure process as provided in Alabama statutes; they seek to go around normal legal process which requires a foreclosure lawsuit.

Plaintiff has reason to believe that at least one of Plaintiff's properties was unlawfully sold, while Plaintiff waited for Ocwen to respond to Qualified Written Requests.

Ocwen has refused to produce adequate evidence that they are the current servicer of the loans, evidence they have standing to perform a Sale Under Power, or any evidence of how many of the Plaintiff's four units have been unlawfully sold.

In support of Plaintiff's claims, she shows this Honorable Court the following:

## I.        PARTIES TO THE ACTION

1.     Plaintiff, Ms. Ford at all times relevant has resided at:   30 Spinnaker Way, Coronado, California  92118.

2.     Defendant **Cenlar**, according to their website, is a "Private Label subservicer, keeping all contacts in the client's name in front of their customers. At Cenlar, your name comes first"[2]; organized under the laws of New Jersey, with its principal place of

---

[2] http://www.cenlar.com/WHOWE.html

Original Complaint 4

business located at:  425 Phillips Blvd., Ewing, NJ 08618-1430. They can be served through their Registered Agent: **CT Corporation System,** 818 West Seventh St, Los Angeles, CA 90017

3.    Defendant **Ocwen**, is a Mortgage Loan Servicing Corporation, according to obtainable information from Ocwen's website:  "For serving Ocwen with legal process, please send to our registered agent: **CSC Lawyers Incorporating Service,** 2730 Gateway Oaks Drive Suite 100, Sacramento, CA 95833";[3]

4.    Defendant **Mortgage Electronic Registration Systems** (MERS), is sometimes an electronic registration system, and sometimes claims to be holder of the note, lender, assignee, and more. Defendant, MERS is organized and existing under the laws of the State of Delaware; they can be served through their Registered Agent **GENPACT REGISTERED AGENT, INC.,** at:  15420 Laguna Canyon Road Ste 100, Irvine, CA 92618.

5.    The Defendants, and each of them, were the agents, Employees representative partner, Officers, principals and/ or joint venturers of each of the remaining defendants, and in doing the things hereinafter alleged, were acting within the scope, course and purpose of such agency, employment or position, or within the apparent scope, course and purpose of such agency, employment or position and with permission and consent of each of the remaining defendants.

---

[3] http://www.ocwencustomers.com/ci_contact.cfm?cont=1

## II.    JURISDICTION

6.    This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331, as well as the specific grants of federal court jurisdiction under the federal laws represented by TILA, RESPA, HOEPA, the Wire Act, the Mail Fraud Act, Bank Fraud, and RICO, as this is a civil action arising under the laws of the United States.

7.    Jurisdiction is also invoked under 28 U.S.C. §1332 on the grounds of citizen diversity, and the amount in controversy is over Seventy-Five Thousand Dollars, ($75,000.00); all parties involved are citizens of different states.

8.    This Court has supplemental jurisdiction of the state law causes of action asserted herein pursuant to 28 U.S.C. § 1367(a) as these claims are so related and so inexorably intertwined to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

9.    Venue is proper in this District

## III.    BRIEF BACKGROUND

10.    Plaintiff incorporates by reference paragraphs 1 through 9, inclusive, and all unnumbered paragraphs of this Complaint, including all paragraphs of general allegations as if the same were fully set forth herein.

11.    Plaintiff is the owner of four condominium units, located in the state of Alabama and are more commonly known as 204 Summerville Ct., Unit 61A - recorded in Book-6315, Page-42; Unit 61B - recorded in Book-6314; Page-1890; Unit 62A - recorded

Original Complaint 6

in Book- 6315, Page-24; and Unit 62B -  recorded at Book-6314, Page-1870; in the County of Mobile, Alabama  36607.

12.     Plaintiff executed Security Deeds for each of the subject rental properties on January 3, 2008 in favor of Taylor, Bean & Whitaker, a Lender organized and existing under the laws of TX, located at 7500 San Felipe, Suite 500, Houston, TX  77063.

13.     On August 5, 2009, Taylor, Bean & Whitaker, the only creditor of record, closed its doors and entered into Bankruptcy protection.  See *Exhibit A*

14.     Shortly thereafter, Cenlar notified Plaintiff that they were the current servicer of the loan, and payments were to be made to them.

15.     On one of the many phone calls Plaintiff made to Cenlar, she was verbally informed that the Alabama properties were transferred to Ocwen; there was never written information or confirmation received by Plaintiff of the change; shortly thereafter, both Cenlar and Ocwen claimed to be the current servicer of the loans.

16.     At all times since recordation of Plaintiff's deed, the loan numbers associated with the above referenced Security Deeds has been 240522, 2240498, 2240520, and 2143747.

### IV.          GENERAL ALLEGATIONS

17.     Plaintiff incorporates by reference, paragraphs 1 through 16, inclusive, and all unnumbered paragraphs of this Complaint, including all paragraphs of general allegations as if the same were fully set forth herein.

18.     This action is brought against Defendants, who unlawfully committed deceptive and unfair business practices, fraud, cloud on title, and violations of Federal and State consumer protection laws, warranting remedies and judgment at law for damages as well as Emergency equitable injunctive relief, in the form of a Restraining Order/Injunction.

19.   Defendants, who are lenders, servicers, subservicers, investors, sold a majority of their residential loans to the secondary market, that is, third-party investors or qualifying special-purpose entities that issue interest-bearing securities representing the loans' interest stream.

20.     Defendants violated the law when they provided undisclosed financial incentives, fees, payments and other things of value to their agents, account executives, loan officers, and brokers, marketing and selling their financial product; said payment and incentives constituting a prohibited kickback, referral fee or other things of value.

21.     Defendants elected to perform the non-judicial Sale Under Power; foreclosing law firms and entities are guaranteed substantial legal fees and sales commissions, so there is no real incentive for the law firms conducting these foreclosure proceedings to conduct a scintilla of quality control and ensure that the proper, rightful party may actually request and enforce the default provisions under the applicable promissory notes.

22.    Mortgage Electronic Registration Systems (MERS), is exactly what their name implies; they are an electronic registration system, created by the Real Estate ERS; MERS and others have engaged in a pattern of fraud and deception across the country in attempting to foreclose on residential properties where a plethora of violations are evident on the face of the documents executed in connection with their consumer transaction, including violations of RESPA, HOEPA, TILA, the Wire Act, the Mail Fraud Act, the Uniform Commercial Code, and other federal and state laws.

23.    By regularly threatening foreclosure and actually scheduling foreclosure sales dates, Defendants have engaged in a pattern of racketeering activities including extortion and collection of unlawful debts which are considered prohibited activities by the Racketeer Influenced and Corrupt Organizations Act, U.S.C. 18 § 1961, et. seq. ("RICO").

24.    As part of the chain of custody of the Promissory Notes, Defendants (a) have not disclosed who is the true holder in due course; (b) have not identified the parties in possession of endorsement; and (c) have not made available for review the original signed and dated Notes. In fact, Defendants have not even disclosed if the Note is part of a mortgage backed security pool, a securitization agreement, or identified a proper holder in due course person, entity, or group.

25.    It is quite revealing that nowhere is there an indication of who the "holder", the "holder in due course", or who the entity authorized to enforce the default provisions

Original Complaint 9

of the Promissory Note actually is.

26.     Further, there is no indication as to what consideration, if any, Ocwen tendered to meet the requirements of a "holder in due course."

27.   RESPA §2605 requires, among other things, that the mortgage broker and/or the lender provide the borrower with a Good Faith Estimate of Closing Costs within three calendar days of the date the application is prepared or received. 24 C.F.R. § 3500.7(b). This Good Faith Estimate is essentially the method by which lenders and mortgage brokers satisfy their TILA disclosure requirements in the context of mortgage loans.

28.     Defendant's actions violates President Obama's Helping Families Save Their Homes Act  signed into legislation on May 20, 2009 which "Establishes right of a homeowner to know who owns their mortgage"

29.     HMA was to prevent many of the abuses faced by Plaintiff in the case at bar, and it was based on the following facts:  Often mortgage loans are sold and transferred a number of times.  Borrowers often have difficulty determining who owns their loan, and who to contact with questions, problems or complaints about their loan.  This legislation requires that borrowers be informed whenever their loan is sold or transferred, so that they will always know who owns their loan.  "These landmark pieces of legislation will protect hardworking Americans, crack down on those who seek to take advantage of them, and ensure that the problems that led us into this crisis

never happen again," said President Obama.

30.    Defendants violated the AL statutes concerning Sales Under Power, as well as the Notice and Publications of same.

31. With actual knowledge of Plaintiff's residential address, and with malicious intent to defraud, the defendants sent the Demand letters to the tenants, and emailed the manager of the properties, foregoing mailing same to the Plaintiff.

32. AL Code clearly states that when the owner is a resident of another state, they are to send the Notices to the proper address of the owner's residence.

33.    June 11, 2010 letters were sent to the tenants and property manager, but nothing was mailed to the owner's residence.  The owner's residence is on all the loan documents, the security instruments, and the warranty deed.

34.    Surely if any or all of the defendants were the holder, servicer, or any other entity having a security interest in the properties, they would have had actual knowledge of, and mailed the documents to Plaintiff's residential address.

35.    One can only come to the conclusion, that because the defendants obviously pretend not to know the true residency of the Plaintiff, when it is clearly on all documents pertaining to the four properties, defendants have perpetrated a fraud with the intent to defraud, and unlawfully perform a Sale Under Power and take Plaintiff's properties.

36.    It is a fact, that Plaintiff cannot say whether or not the Sale under Power has or

Original Complaint 11

hasn't taken place; she has been refused all information and documentation pertaining to foreclosure, or sale under power; nevertheless, Plaintiff has already and will continue to suffer immediate, substantial, and irreparable injury.

37.    If Defendants continue to insist that they have foreclosed, and continue to cause the tenants to move from Plaintiff's properties, this Court may not be able to fashion an adequate remedy to satisfy the Plaintiff's claims since the property in dispute will no longer be in the possession of the Plaintiff.

38.    There is no other adequate remedy at law that can satisfy Plaintiff's claims should Plaintiffs succeed at trial.

## V.              RESPA VIOLATIONS

39.    Plaintiff incorporates by reference paragraphs 1 through 38, inclusive, and all unnumbered paragraphs of this Complaint, including all paragraphs of general allegations as if the same were fully set forth.

40.    Plaintiff was unable to get information from Ocwen, as to where to send a Qualified Written Request (QWR), was able to obtain the address over the phone from Cenlar; the QWR was sent via Fed Ex on December 28, 2009, and signed for by K. Ambler, see *"Exhibit A-2"*

41.    After getting no response from the QWR sent on December 28, 2009, Plaintiff sent a second QWR on January 27, 2010, again requesting information.

42.    According to a lady named "Lillian" at Ocwen, that Plaintiff talked to on the phone, Ocwen mailed a letter addressing Plaintiff's "concerns" on April 14, 2010; at

Original Complaint 12

first claiming it was mailed to the Alabama address, which statement "Lillian" retracted a few minutes later, claiming then that the letter had been addressed to Plaintiff's residence in California. Plaintiff to date has not received the April letter.

43. "Lillian" informed Plaintiff that foreclosure proceedings had begun March 17, 2010; but refused to respond to questions of why proceedings would have begun without addressing the issues addressed in the QWR.

44. According to letters sent to the AL properties, to and received by the tenants, an unlawful Sale Under Power had completed in early June 2010.

45. On or around June 16, 2010, "Lillian" advised Plaintiff in the phone call from Plaintiff, that she would send an email to the foreclosure department to stop proceedings.

46. For many months, Plaintiff has shown good faith in dealing with the circumstances surrounding the properties, and has attempted to work through the roadblocks put in place to prevent her ability to get much needed documentation.

47. Plaintiff, has further made a good faith effort to obtain pertinent information on exactly which entity is supposed to be servicing her loan, who she legally is supposed to be making the payments to; and believing promises from Ocwen that there would be no Sale Under Power while she waited for the information to be provided.

48. Ocwen is also notorious for violating Court Orders when people are in Bankruptcy as show in *"Exhibit D"* where the Court Sanctioned them Seventy-One

Thousand Five Hundred Dollars ($71,500.00) in Case No. 04-003875-5-SWH. United

States Bankruptcy Court, E.D. North Carolina, Raleigh Division

49.  Ocwen is considered to be "infamous for ignoring grace periods, misapplying and

failing to apply funds, and improperly charging late fees; frequently compound this

problem by then reporting to the credit bureaus."   "The continued and repeated

problems experienced... loans are serviced by Ocwen, a large nationwide servicer of

subprime mortgage loans, illustrates the financial incentives provided...Late fees and

loan collection fees made up almost 18% of Ocwen's servicing income in 2008...

2007, Ocwen reported that an additional $29 million... made up 9% of its total

servicing income."[4]

50.    Under the Real Estate Settlement Procedures Act (RESPA) §6 the servicer **must**

acknowledge the QWR in writing within twenty (20) business days of receipt; and

within sixty (60) days, **must** resolve the complaint;  borrowers may obtain actual

damages, as well as additional damages if there is a pattern of non-compliance, which

in the matter of Ocwen, they are notorious for non-compliance.

51.    Further, RESPA §6 forbids the servicer to make negative credit reports during

the sixty (60) day period within which it is mandatory they comply with the QWR;

surely if making negative reports to Credit Reporting Agencies is prohibited during the

---

[4] Comments to the Federal Trade Commission 16 CFR Parts 321 and 322 [RIN 3084-AB18]  Advance Notice of Proposed Rulemaking:  Mortgage Acts and Practices Rulemaking Rule No. R911004 by the *National Consumer Law Center* August 2009.

time the servicer has to comply with the QWR, continuing with an unlawful foreclosure would be prohibited as well. .

52.    Wherefore, Plaintiff thus demands an award of compensatory damages in the amount of Five Hundred Thousand Dollars ($500,000.00) from each defendants, and actual, and punitive damages.

### VI.                        UNLAWFUL FORECLOSURE

   a)  **Lack of Standing[5]**

53.    Plaintiff incorporates by reference paragraphs 1 through 52, inclusive, all unnumbered paragraphs of this Complaint, including all paragraphs of general allegations as if the same were fully set forth herein.

54.    Plaintiff doesn't know for sure whether or not there has been a Sale Under Power of any/all of her AL properties; the June 11, 2010 letters show that one unit had been sold at that time.

55.    The defendants have refused to comply with all requests for information concerning the four rental properties; Plaintiff does not have sufficient knowledge to

---

[5] The issue of "Standing" is a basic issue of Constitutional Law either at the Federal level or at the state district court level. That is to say, if you are not the person directly injured or directly benefiting from a specific law or circumstance, you cannot go to court and try to enforce any rights that do not belong to you. The United States Supreme Court in several cases has stated that federal courts must satisfy for themselves that Standing exists and that "the plaintiff has `alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction." ***Warth v. Seldin***, 422 U.S. 490, 498-99 (1975). Thus, if no direct injury or direct harm to the claimant that wishes to pursue a claim in court, then no right to "standing" or right to be in court in the first place.

determine whether or not there has in fact been a Sale Under Power performed, and if there has been, which unit or units have been sold.

56.    The Defendants knowingly, willingly, wantonly, and maliciously acted fraudulently, and in bad faith, with absolute disregard to Plaintiff's property Rights, Federal Law and Alabama Statutes in an attempt to perpetrate a fraud and wrongfully sale subject real properties.

57.    Plaintiff has never been the debtor for loan number 71488035 Plaintiff is now, and has been for all time, ignorant of who is, in fact, the true debtor is for loan number 71488035.

58.    On information and belief, Plaintiff alleges that the service of the purported note was, without her knowledge, by some means transferred from or by Defendant Ocwen or Cenlar either completely or by association or other means to MERS, who unknown to Plaintiff, provided services in various forms to be determined to others which were of such a nature to render them a "Servicer."

59.    Also on January 3, 2008, Plaintiff executed a "Security Instrument" which cited the lenders as Taylor, Bean & Whitaker, a Lender, and stating in the definition section that:

> "'MERS' is a Mortgage Electronic Registration Systems, Inc., MERS is a separate corporation  that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument**, MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI  48501-2026, tel. (888) 679-MERS"

Original Complaint 16

60.  Ocwen is named nowhere in any of the documents that Plaintiff has, or was ever on file at the Mobile County Probate Court; without a direct injury or direct harm, there is no right to "standing" or right to perform a Sale Under Power in the first place.

61.    There is a total failure to adequately create, maintain, and monitor any indicia of quality and/or quality control for those individuals and entities originating loans so that loan applications would be accurately and truthfully completed; failures to properly disclose all other hidden costs in connection with the financing of a consumer transaction; failures to give timely Truth in Lending Disclosures or Good Faith Estimates; failures to make sure that bank statements would not be altered, falsified, or otherwise improperly completed or tampered with; failures to show the proper and chronological "chain of custody" of a Promissory Note in the securitized mortgage backed securities market so as to unquestionably give the right to the "holder" of the Note to enforce the Notes by foreclosure when the Notes default; and failures to account for "bail out" fund payments, credit enhancement payments (e.g. securitized mortgage pool default insurer), loss reserve fund payments, and getting paid out perhaps no less than three (3) times on the same mortgage notes when a foreclosure is instituted against the Plaintiffs, are in direct violation of TILA, RESPA, HOEPA, federal and state Bank Fraud laws, and others. Additionally, this suit also raises issues of actual fraud and artifice designed and perpetrated by various parties acting in concert and preying upon unsuspecting consumers.

62.    The Plaintiff contends that said sale was wrongful, illegal, in violation of law and the documents governing the relationship between the Plaintiff and the owners of the Plaintiff's mortgage.

63.    The Plaintiff contends that the entity lacked standing to initiate a Sale Under Power and that any such sale is void or at least voidable and that no title has passed to hands, as there was no legal title to pass to it from the entity that performed the Sale Under Power.

64.    The Plaintiff alleges that the actions of defendants and their agents, employees and servants were wrongful and tortious.

65.    The Plaintiff alleges that the actions of the any entity involved in a Sale Under Power, or the future intent to perform a Sale Under Power were wrongful and tortious;. Wrongfully foreclosing is a violation of law, wrongful and tortious and that Ocwen holds no title to Plaintiff's properties, and the actions constitute trespass, negligence, wantonness, abuse of process and slander of title.

66.    The Plaintiff alleges that the actions of Defendants, coupled with the actions of their employees, agents and servants were a civil conspiracy to deprive the Plaintiff of her properties, and cause monetary loss from her tenants being informed of a Sale Under Power, and told they had to move out.

67.    Defendants are in a joint venture wherein these parties were engaged in a civil conspiracy to falsify legal documents for the purpose of foreclosing on the homes of

individuals under a colorable title of right for the purpose of generating profits and income from the act of depriving individuals of their homes and for the purpose of unjustly enriching the participants of the joint venture at the expense of the unsuspecting and unknowing.

68.     Plaintiff alleges that the defendants have the right to choose and control the attorneys who it hires to foreclose on loans and by having such control are liable for the wrongful and tortious conduct of their agents, employees and servants.

69.     As a direct result of the acts complained of,  the Plaintiff has been caused to suffer great mental anguish, economic and emotional damages and claim from the defendants all damages allowable under the law.

**b) Negligence**

70.     Plaintiff incorporates by reference paragraphs 1 through 69, inclusive, all unnumbered paragraphs of this Complaint, including all paragraphs of general allegations as if the same were fully set forth herein.

71.     Defendants negligently ejected, or caused to be ejected the tenants of at least one of Plaintiff's AL properties so far.

72.     Any Sale Under Power or attempt at foreclosure that has been performed is void.

73.     The Plaintiff was injured and damaged as alleged above and has suffered mental anguish, economic injury, as a direct result of the defendants' negligence, the defendants are liable for all natural, proximate and consequential damages due to its

negligence for which Plaintiff demands judgment in her favor and all damages allowed by law.

### c) Wantoness

74.    Plaintiff incorporates by reference paragraphs 1 through 73, inclusive, all unnumbered paragraphs of this Complaint, including all paragraphs of general allegations as if the same were fully set forth herein.

75.    Defendants, with reckless indifference to the consequences, consciously and intentionally acted to eject tenants from the Plaintiff's property, which she rightfully owns.

76.    Defendants, with reckless indifference to the consequences, consciously and intentionally instituted an unlawful Sale Under Power, with actual knowledge that the properties did not belong to any of the defendants.

77.    These actions were taken with reckless indifference to the consequences, consciously and intentionally in an effort to increase profits and/or unjustly enrich the defendants.

78.    As a result thereof, the defendants are liable for all natural, proximate and consequential damages due to their wantonness as well as punitive damages upon a proper evidentiary showing.

### VII.          SLANDER OF TITLE

79.    Plaintiff incorporates by reference paragraphs 1 through 78, inclusive, all

unnumbered paragraphs of this Complaint, including all paragraphs of general allegations as if the same were fully set forth herein.

80.     Defendants, in filing foreclosure documents in Mobile County Probate Court, possibly a foreclosure deed, and other documents, which are all void, - has caused a cloud to be placed on the title of the property of the Plaintiff.

81.     As the proximate cause of defendants' said slandering of the Plaintiff's title, the Plaintiff has been caused to suffer injuries and damages and claim all damages allowable under law.

**VIII.          JOINT VENTURE LIABILITY**

82.     Plaintiff incorporates by reference paragraphs 1 through 81, inclusive, all unnumbered paragraphs of this Complaint, including all paragraphs of general allegations as if the same were fully set forth herein.

83.     Defendants are part of a joint venture as defined by controlling law.

84.     Each member of a joint venture is jointly and severally liable for any tortious act of any member of the joint venture against the Plaintiff.

85.     As a result of the actions of the joint venturers, the Plaintiff has been injured and damaged as heretofore alleged.

86.     The Plaintiff claims all damages as allowed by law for their wrongful acts.

**IX.          UNLAWFUL FORECLOSURE**

87.     Plaintiff incorporates by reference paragraphs 1 through 86, inclusive, all

unnumbered paragraphs of this Complaint, including all paragraphs of general allegations as if the same were fully set forth herein.

88.    Defendants have possibly completed a foreclosure proceeding against the Plaintiff in violation of law.

89.    The initiation of the foreclosure proceeding by Ocwen was either negligent, wanton, or both, depending on proof adduced at trial.

90.    As a result thereof, the defendants are liable for all natural, proximate and consequential damages due to their actions including an award of punitive damages upon a proper evidentiary showing.

## X.            UNJUST ENRICHMENT

91.    Plaintiff adopts and realleges paragraphs 1 through 90 and all other prior paragraphs as if set out here in full.

92.    Defendants' actions in pursuing Sale Under Power and foreclosure on Plaintiff's property is in violation of law resulted, and resulted in defendants being unjustly enriched by the payment of fees, insurance proceeds and equity in the properties.

93.    As a result of the defendants' unjust enrichment, the Plaintiff has been injured and damaged in that the Plaintiff has lost respectable and timely rent paying  tenants, her properties and has lost any equity in her rental properties resulting in financial and emotional damages including mental anguish.

Original Complaint 22

94.     Plaintiff claims all damages allowable under law as a result of defendants' wrongful conduct and unjust enrichment.

## XI.          CONSPIRACY

95.     Plaintiff incorporates by reference paragraphs 1 through 94, inclusive, all unnumbered paragraphs of this Complaint, including all paragraphs of general allegations as if the same were fully set forth herein.

96.     Defendants, engaged in an unlawful combination and conspiracy to foreclose on mortgage loans against Plaintiff for the purpose of unjustly enriching themselves in violation of law. This unlawful activity had the effect of unjustly enriching the joint venturers and conspirators.

97.     As a result of this civil conspiracy, civil wrongs were committed against the Plaintiff. The motivation for the civil conspiracy was third party defendant's greed.

98.     As a result of the civil conspiracy the Plaintiff claims all damages allowed by law.

## XII.         BREACH OF FIDUCIARY DUTY

99.     Plaintiff incorporates by reference paragraphs 1 through 98, inclusive, all numbered paragraphs of this Complaint, including all paragraphs of general allegations as if the same were fully set forth herein.

100.    This fiduciary duty included, among other things, the duty to complete the Loan Application accurately, to disclose to the Plaintiff all material facts concerning the Plaintiff's mortgage loan and settlement process, and to disclose all transactions

Original Complaint 23

whereby the lender would itself benefit from the principal/agent relationship.

101.     The lender, and its officers, directors and employees, specifically including breached their fiduciary duties to the Plaintiff by concealing, as well as by failing to properly disclose other material facts as required by RESPA, CRESPA and TILA.

102.     As a direct result of these Defendants' breach of their fiduciary duties, the Plaintiff has suffered, and will continue to suffer, considerable damages.

### XIII.                            QUIET TITLE

103.     Plaintiff incorporates by reference paragraphs 1 through 102, inclusive, all unnumbered paragraphs of this Complaint, including all paragraphs of general allegations as if the same were fully set forth herein.

104.     At all times herein, Defendants committed acts of misrepresentations and fraud as to the terms of the loan, mortgage, and value of the property with the intent to exert undue influence.

105.     Defendants have created an illegal cloud on title. Plaintiffs have suffered severe financial hardship as a result. Plaintiff requests that the Court invalidate any deed of trust on the Plaintiff's property.

### XIV.                            INJUNCTIVE RELIEF

106.     .Plaintiff incorporates by reference paragraphs 1 through 105 inclusive, all unnumbered paragraphs of this Complaint, including all paragraphs of general allegations as if the same were fully set forth herein.

Original Complaint 24

107.   Plaintiff seeks a determination as to the legal status of the parties as to the Note and the Deed of Trust.

108.   Defendants should be required to provide the original note with the appropriate endorsements thereon to Plaintiffs or this Honorable Court so that it may determine under the law, who owns the right to receive payments on the loan and exercises the rights relating to said ownership.

109.   Until Defendants are able to provide Plaintiffs and this Honorable Court the aforementioned documents, this Honorable Court should order that Plaintiffs are not required to make any further payments on the Note and enjoin any further collection activity on the Note, including staying the count down towards the date a Notice of sale may be filed and served. 112.Plaintiffs seek a determination as to the legal status of the parties as to the Note and the Deed of Trust.

## XV.        DEMAND FOR JURY TRIAL

110.   Plaintiff realleges and incorporates by reference paragraphs 1 through 42, and all other paragraphs above, as though fully set forth in this cause of action.

111.   Pursuant to Fed. R. Civ. P. 38(b), the Plaintiff demands a trial by jury of all issues raised in this Complaint and triable as of right by a jury.

## XVI.        PRAYER FOR RELIEF

WHEREFORE, Plaintiff Prays for Judgment against the defendants, and each of them as follows:

Original Complaint 25

1.      Declare that the Sale Under Power and/or foreclosure and/or attempt to foreclose on Plaintiff's properties illegal and void and  that the same be permanently enjoined from past, current and/or future attempts.

2.      That the January 03, 2008, loan transaction be deemed void as a result of defendants' various fiduciary breaches;

3.      That the actions of all of the defendants be determined to be unfair and deceptive business practices in Violation of Alabama and California law, and that this Court award all such relief to Plaintiff as Plaintiff may be entitled, including treble damages and an award of court costs, and should Plaintiff find competent legal counsel, the award of attorney's fees;

4.      That the actions of defendants be determined to be in violation of the Federal Debt Collection Practices Act, including 15 U.S.C. Title 41, Subchapter V §§ 1692, et seq, and the Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. §§2601 to 2607, which for each violation Plaintiff is allowed One Thousand Dollars ($1000.00) for each and every violation;

5.      Grant a permanent injunction precluding defendants, and each of them, from engaging in the wrongful conduct identified herein;

6.      Quiet title on Plaintiff's properties;

7.      Sit a jury;

8.      Grant compensatory damages against defendants of not less than $500,000.00

Original Complaint 26

for each defendant, and for each count that compensatory damages is acceptable;

9.      Grant punitive and exemplary damages against defendants in a sum according to proof at trial, or upon the Jury's determination;

10.     Grant an award of attorney's fees, should Plaintiff find competent legal counsel; and grant reasonable costs of suit incurred; and

11.     For any other relief the Court may deem fair, just, and proper.

Respectfully submitted this **3o** day of August, 2010

By: _Billie Jean Ford_____
BILLIE JEAN FORD, Pro Se
30 Spinnaker Way
Coronado, California  92118

Original Complaint 27

**VERIFICATION**

I, Billie Jean Ford, having been duly sworn, under penalty of perjury, deposes and says that I am over the age of eighteen (18) and mentally competent to testify in these matters. My person and my property are in danger of immediate and irreparable injury, loss, or damage. I have prepared and read the foregoing pleading, the facts stated therein are from first hand knowledge and are true and correct, and the Exhibits included herewith are correct and unaltered copies with nothing omitted and nothing added.

BILLIE JEAN FORD

Subscribed and sworn to before me,

this 30th day of August, 2010.

Seal

Notary Public, State of California

KIYA KAY HOLMES
Commission # 1743541
Notary Public - California
San Diego County
My Comm. Expires May 4, 2011

My Commission Expires: may 4, 2011

Original Complaint 28

# EXHIBIT INDEX

Exhibit A:     November 27, 2009 Cenlar Letter

Exhibit A-2:  Evidence December 28, 2009, signed for by K. Ambler

Exhibit B:     Copy of Ocwen April 1, 2010 stating they needed sixty (60) days

Exhibit C:     Ocwen Sale Under Power letters of June 11, 2010

Exhibit D:     Case No. 04-003875-5-SWH. United States Bankruptcy Court, E.D. North Carolina, Raleigh Division

# Exhibit A

November 2009 Cenlar letter



CENTRAL LOAN ADMINISTRATION & REPORTING

November 27, 2009

Billie Jean Ford
30 Spinnaker Way
Coronado, CA  92118

Re: Loan#'s 30864375,30741664,30741706,30650709 and 30741698

Dear Ms. Ford;

I am writing in response to your e-mail concerning the above-mentioned loans.  I would like to provide you with the following information regarding the concerns you have brought to our attention.

- The servicing of your loans was transferred from Taylor, Bean and Whitaker to Cenlar as of August 12, 2009.  I have enclosed copies of the transfer letters for your reference.
- The investor for each of your loans is Freddie Mac.
- As we were not provided the original loan documents from Taylor, Bean and Whitaker we are not able to provide them to you however; I have enclosed the Taylor, Bean and Whitaker payment history as well as the Cenlar payment history for your review.

Should you have any further questions or concerns regarding this matter you may contact us at 866-430-9689.

Sincerely,

Deborah Werline
Quality Coordinator

866-430-9689 • www.loanadministration.com

# Exhibit A-2

Evidence December 28, 2009, signed for by K. Ambler

FedEx Express
Customer Support
Domestic Trade
3875 Airways Boulevard
Module H 4th Floor
Memphis, TN 38116

U.S. Mail: PO Box 727
Memphis, TN 38194-4643

Telephone 901-369-3600



January 11, 2010

BILLIE FORD
(619) 429-6460

Dear BILLIE FORD:

Our records reflect the following delivery information for the shipment with the tracking number
870340274556.

Delivery Information:

Signed For By:   K.AMBLER

Delivered to:   1661 WORTHINGTON RD 100

Delivery Date:   December 30, 2009

Delivery Time:   09:44 AM

Shipping Information:

Tracking No:   870340274556                    Ship Date:   December 28, 2009

Shipper:   BILLIE FORD                          Recipient:   OCWEN LOAN HRC DEPT
                                                            1661 WORTHINGTON RD STE
           30 SPINNAKER WAY                                  100
           SAN DIEGO, CA 92118                               WEST PALM BEACH, FL
           US                                                33409
                                                            US

Thank you for choosing FedEx Express. We look forward to working with you in the future.

FedEx Worldwide Customer Service
1-800-Go-FedEx (1-800-463-3339)
Reference No: R2010011100887421833

This Information is provided subject to the FedEx Service Guide.

# Exhibit B

Copy of Ocwen April 1, 2010 stating they needed sixty (60) days

O C W E N

Ocwen Loan Servicing, L
P.O. Box 24737
West Palm Beach, FL 33416-4737
(Do not send any correspondence or payments to the above address)

WWW.OCWEN.COM

April 01, 2010

Billie Jean Ford

30 Spinnaker Way
Coronado, CA 92118-0000

Loan Number:        71488035
Property Address:   204 Summerville Ct 61b , Mobile, AL 36607-0000

Dear Borrower(s):

We are in receipt of your letter requesting that Ocwen perform research relative to the issue(s) stated in your letter for the above referenced loan. It is Ocwen's policy to perform all research and provide a written response to you within fifteen (15) days from the receipt of your letter. However, as a result of the research required to accurately and completely address your request, we will be unable to respond within our target of fifteen (15) days.

In accordance with the Real Estate Settlement Procedures Act (RESPA), Ocwen is afforded sixty (60) days from the receipt of your letter to respond to you with an explanation of the facts surrounding your issue(s), including the detail of any adjustments or corrections (if applicable.) If the servicing of your loan was assigned, sold or transferred to Ocwen from a prior loan servicer, Ocwen may be required to obtain information concerning your loan from your prior servicer. The process of obtaining this information takes time, but Ocwen is committed to serving you and accordingly your request is a priority with us.

Additionally, Ocwen may need to contact you for further information in order to process your request. Ocwen will notify you if any additional information is required. Please direct any inquiries regarding your research request to the following address:

**Ocwen Loan Servicing, LLC**
**Research Department**
**P.O. Box 785055**
**Orlando, FL 32878-5055**

If you have any questions please call (800) 241-9960 Ext 5050.

Sincerely,

Research Department

ACKNOWL.15

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

# Exhibit C

Ocwen Sale Under Power letters of June 11, 2010



# SHAPIRO & PICKETT, LLP

ATTORNEYS AT LAW

Gerald M. Shapiro
Licensed in Illinois &
Florida only
David S. Kreisman
Licensed in Illinois only
Edith Schauble Pickett
Admitted in Alabama
and Florida
David M. Sigler
Admitted in Alabama

June 11, 2010

10-000250
Billie Jean Ford
Occupant/Resident
204 Summerville Court
Unit #61A
Mobile, AL 36607

**RE:**   **Ocwen Loan Servicing, LLC vs. Billie Jean Ford, A Single Person**
**Billie Jean Ford**
**71486401**
**Property Address:  204 Summerville Court, Unit #61A, Mobile, AL 36607**
**S&P #: 10-000250**

Dear Billie Jean Ford or Occupant/Resident:

We wish to advise you that on June 10, 2010, the mortgage loan on the above referenced property was duly foreclosed in accordance with the power of sale contained therein.  You are hereby given notice pursuant to Code of Alabama 1975 Section 35-9-5, that your tenancy of the above described property is terminated.

Your attention is respectfully directed to Title 6, Section 6-5-251, <u>Code of Alabama</u> (1975) which reads as follows:

> "Delivery of possession to purchaser on demand.  The possession of the land must be delivered to the purchaser or purchaser's transferees by the debtor or mortgagor if in their possession or in the possession of anyone holding under them by privity of title, within ten (10) days after written demand for the possession has been made by, or on behalf of, the purchasers or purchaser's transferees.  If the land is in the possession of a tenant, written notice must be given to the debtor or mortgagor, and the debtor or mortgagor and the debtor or mortgagor must direct the tenant to deliver possession or recognize the purchaser as his or her landlord in the event the lease antedates the mortgage, judgement or levy.  If the debtor or mortgagor cannot be found, notice to the tenant is sufficient and he must deliver possession within ten (10) days.  Failure of the debtor or mortgagor or anyone holding possession under him or her to comply with the provisions of this section forfeits the right of redemption of the debtor or one holding possession under the debtor."

In accordance with and pursuant to the above statute, written demand is hereby made upon you to deliver and quit possession of the above described premises within ten (10) days from the date of this letter.

Unless possession is delivered within ten (10) days from the date of this letter under the said statute, you will forfeit your right to redemption.

---

651 Beacon Parkway West, Suite 115 Birmingham, Alabama 35209 • voice: (205) 323-7757 • fax: (205) 323-8750

The property described in your mortgage was purchased at the foreclosure sale on June 10. 2010. by Ocwen Loan Servicing, LLC, for the sum of Ninety-Five Thousand Six Hundred Fifty-Seven Dollars and Sixty-Three Cents, on behalf of Ocwen Loan Servicing, LLC.

Demand is hereby made upon you to immediately vacate and deliver possession of said real estate within ten (10) days from the date of this letter.  In the event you do not deliver possession of said real estate within the said time, the said Ocwen Loan Servicing, LLC will have no alternative than to file an ejectment suit in the Circuit Court.

Should you have any questions regarding this matter, do not hesitate to contact this office.

Sincerely,

EDITH S. PICKETT

cc:       Ocwen Loan Servicing, LLC
          1661 Worthington Road; Suite 100
          P.O. Box 24737
          West Palm Beach, Florida 33415

"THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS NOTICE IS REQUIRED BY THE PROVISIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT AND DOES NOT IMPLY THAT WE ARE ATTEMPTING TO COLLECT MONEY FROM ANYONE WHO HAS DISCHARGED THE DEBT UNDER THE BANKRUPTCY LAWS OF THE UNITED STATES."

91 7108 2133 3937 6013 7974

# SHAPIRO & PICKETT, LLP

ATTORNEYS AT LAW

Gerald M. Shapiro
Licensed in Illinois &
Florida only

David S. Kreisman
Licensed in Illinois only

Faith Schauble-Pickett
Admitted in Alabama
and Florida

David M. Sigler
Admitted in Alabama

Date: June 11, 2010

CERTIFIED MAIL, Return Receipt Requested and Regular U.S. Mail

Tenant
204 Summerville Court
Unit #61A
Mobile, AL 36607

RE:     Demand For Possession And Notification Of Termination Of Tenancy Pursuant To Code Of Alabama, Title 6, Section
        6-5-251

Dear Tenant:

We wish to advise you that on June 10, 2010, the mortgage loan on the above referenced property was duly foreclosed in accordance with the power of sale contained therein.  You are hereby given notice pursuant to Code of Alabama 1975 Section 35-9-5, that your tenancy of the above described property is terminated.

Your attention is directed to Title 6, Section 6-5-251, Code of Alabama (1975) which reads as follows:

> Delivery of possession to purchaser on demand.  The possession of the land must be delivered to the purchaser or the purchaser's transferees by the debtor or mortgagor if I their possession or in the possession of anyone holding under them by privity of title, within ten (10) days after written demand for the possession has been made by, or on behalf of, the purchasers or purchaser's transferees.  If the land is in the possession of a tenant, written notice must be given to the debtor or mortgagor, and the debtor or mortgagor and the debtor or mortgagor must direct the tenant to deliver possession or recognize the purchaser as his or her landlord in the event the lease antedates the mortgage, judgment or levy.  If the debtor or mortgagor cannot be found, notice to the tenant is sufficient and he must deliver possession within ten (10 days.  Failure of the debtor or mortgagor or anyone holding possession under him or her to comply with the provisions of this section forfeits the right of redemption of the debtor or one holding possession under the debtor.

### Notification of Rights Pursuant to the Federal "Helping Families Save Their Home Act"

Notwithstanding the above referenced Alabama law, the provisions of the Federal "Helping Families Save Their Home Act" MAY provide you with certain rights if you are a bona fide tenant.  Those provisions entitle a bona fide tenant to a ninety (90) day notice to vacate the property you are presently occupying.  Please note that the protections of the Helping Families Save Their Homes Act do not apply to a "tenant" who is the mortgagor or the child, spouse or parent of the mortgagor.

The property described above was purchased at foreclosure sale on June 10, 2010 by Ocwen Loan Servicing, LLC.  Pursuant to the Helping Families Save Their Home Act, demand is hereby made upon you to vacate and deliver possession of said real estate within ninety (90) days from the date of service of this letter or to provide just cause as to why delivery of possession within such time period is not required.  If you are not classified as a "bona fide tenant", please direct your attention to Title 6, Section 6-5-251, Code of Alabama (1975) cited above which requires that you vacate the subject property within ten (10) days.

In the event you do not deliver possession of the real estate within said time, Ocwen Loan Servicing, LLC may elect to proceed with an action for Ejectment in the Circuit Court of Mobile County seeking an order for possession against you.

Should you have any questions regarding this matter, do not hesitate to contact this office.

Sincerely,

SHAPIRO & PICKETT, LLP

EDITH S. PICKETT

## MORTGAGE FORECLOSURE DEED

Billie Jean Ford

STATE OF ALABAMA              )
COUNTY OF MOBILE        )

KNOW ALL MEN BY THESE PRESENTS: That Billie Jean Ford, A Single Person did, on to-wit, the January 3, 2008, execute a mortgage to Mortgage Electronic Registration Systems, Inc., solely as nominee for HMC-Home Mortgage Co., which mortgage is recorded in Book 6315 Page 44; said mortgage was transferred and assigned to Ocwen Loan Servicing, LLC as recorded in Book 6649, Page 1348 et seq., in the Office of the Judge of Probate of Mobile County, Alabama; and

WHEREAS, default was made in the payment of the indebtedness secured by said mortgage and the said Ocwen Loan Servicing, LLC did declare all of the indebtedness secured by said mortgage due and payable and did give due and proper notice of the foreclosure of said mortgage, in accordance with the terms thereof, by publication in The Mobile Press Register, a newspaper of general circulation published in Mobile County, Alabama, in its issues of April 14, 21, 28, May 14, 2010; and

WHEREAS, on the June 10, 2010, the day on which the foreclosure sale was due to be held under the terms of said notice, at _____ o'clock a.m/p.m., between the legal hours of sale, said foreclosure sale was duly and properly conducted, and Ocwen Loan Servicing, LLC did offer for sale and did sell at public outcry, in front of the courthouse door of the Mobile County, Alabama, Courthouse in the City of Mobile, Alabama, the property hereinafter described; and

WHEREAS, the highest and best bid for cash obtained for the property described in the aforementioned mortgage was the bid of Ocwen Loan Servicing, LLC, in the amount of Ninety-Five Thousand Six Hundred Fifty-Seven Dollars and Sixty-Three Cents ($95,657.63), which sum the said Ocwen Loan Servicing, LLC offered to credit on the indebtedness secured by said mortgage, and said property was thereupon sold to the said Ocwen Loan Servicing, LLC; and

WHEREAS, said mortgage expressly authorized the mortgagee to bid at the sale and purchase said property, if the highest bidder therefore, and authorized the Mortgagee or Auctioneer or any person conducting said sale for the Mortgagee to execute to the purchaser at the said sale a deed to the property so purchased:

NOW, THEREFORE, in consideration of the premises and of Ninety-Five Thousand Six Hundred Fifty-Seven Dollars and Sixty-Three Cents ($95,657.63), cash, the said Billie Jean Ford, A Single Person, acting by and through the said Ocwen Loan Servicing, LLC, by BETH MCFADDEN ROUSE, as auctioneer and the person conducting the said sale for the Mortgagee or Transferee of Mortgagee, and the said Ocwen Loan Servicing, LLC, by BETH MCFADDEN ROUSE, as said auctioneer and the person conducting said sale for the Mortgagee or Transferee of Mortgagee, and BETH MCFADDEN ROUSE, as said auctioneer and the person conducting said sale for the Mortgagee or Transferee of Mortgagee, do hereby grant, bargain, sell and convey unto Ocwen Loan Servicing, LLC, the following described real estate situated in Mobile County, Alabama, to-wit:

Unit 61A, Summerville Court, a Condominium, according to that certain Declaration of Condominium of Summerville Court, a Condominium, recorded at Book 6067, Page 1266 in the record of the Office of the Judge of Probate of Mobile County, Alabama; together with an undivided interest in the Common Elements of such Condominium and appurtenant Limited Common Elements for such Unit as declared and provided in the aforementioned Declaration of Condominium of Summerville Court, a Condominium, and all Exhibits thereto.

TO HAVE AND TO HOLD THE above described property unto Ocwen Loan Servicing, LLC, forever; subject, however, to the statutory rights of redemption on the part of those entitled to redeem as provided by the laws of the State of Alabama, and any taxes which may be due.

IN WITNESS WHEREOF, the said Ocwen Loan Servicing, LLC, has caused this instrument to be executed by BETH MCFADDEN ROUSE, as auctioneer and the person conducting said sale for the Mortgagee or Transferee of Mortgagee and in witness whereof the said BETH MCFADDEN ROUSE, has executed this instrument in his capacity as such auctioneer on this the June 10, 2010.

Billie Jean Ford, A Single Person
Mortgagors

Ocwen Loan Servicing, LLC
Mortgagee or Transferee of Mortgagee

By _____
BETH MCFADDEN ROUSE, as Auctioneer and the person conducting said sale for the Mortgagee or Transferee of Mortgagee

Ocwen Loan Servicing, LLC
Mortgagee or Transferee of Mortgagee

By _____
BETH MCFADDEN ROUSE, as Auctioneer and the person conducting said sale for the Mortgagee or Transferee of Mortgagee

By _____
BETH MCFADDEN ROUSE, as Auctioneer and the person conducting said sale for the Mortgagee or Transferee of Mortgagee

STATE OF ALABAMA
COUNTY OF MOBILE

I, the undersigned, a Notary Public in and for said State and County, hereby certify that BETH MCFADDEN ROUSE, whose name as Auctioneer and the person conducting said sale for the Mortgagee or Transferee of Mortgagee, is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that being informed of the contents of the conveyance, he, in his capacity as such Auctioneer and the person conducting said sale for the Mortgagee or Transferee of Mortgagee, and with full authority executed this instrument voluntarily on the day that bears that same date.

Given under my hand and official seal this June 10, 2010.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:

Instrument prepared by:
EDITH S. PICKETT
SHAPIRO & PICKETT, L.L.P.
651 Beacon Parkway West, Suite 115
Birmingham, Alabama 35209
10-000250

GRANTEE'S ADDRESS
Ocwen Loan Servicing, LLC
1661 Worthington Road; Suite 100
P.O. Box 24737
West Palm Beach, Florida 33415

# Exhibit D

Case No. 04-003875-5-SWH. United States Bankruptcy Court,

E.D. North Carolina, Raleigh Division

IN RE ADAMS

In re: CRAIG L. ADAMS and MONICA L. ADAMS, Debtors.

Case No. 04-003875-5-SWH.

United States Bankruptcy Court, E.D. North Carolina, Raleigh Division.

July 7, 2010.

## ORDER FINDING OCWEN LOAN SERVICING LLC IN CONTEMPT OF THE DISCHARGE INJUNCTION AND THE COURT'S ORDER OF MAY 23, 2008 AND AWARDING DAMAGES AND SANCTIONS

STEPHANI W. HUMRICKHOUSE, Bankruptcy Judge

The matter before the court is the chapter 13 debtors' motion for Ocwen Loan Servicing LLC ("Ocwen") to show cause why it should not be held in contempt for violating the terms of an order entered in this court on May 23, 2008, which 1) declared that all mortgage payments due from the debtors to Ocwen were current as of that date and 2) enjoined any action to collect sums discharged. The motion for show cause was filed on September 12, 2008, and the hearing on that motion was continued multiple times at the request of the parties. A hearing ultimately took place in Raleigh, North Carolina, on May 26, 2010. At the conclusion of the hearing, the court announced that it had found Ocwen in contempt of the May 23, 2008 order, and took the damages issues under advisement. The court requested counsel to provide it with the parties' respective damages calculations, and both parties have done so.

## Background

The debtors filed a petition under chapter 13 on October 26, 2004. Ocwen, the debtors' mortgage servicer, was included on their schedules as a secured creditor holding a first lien on the debtors' residence. The debtors' discharge was entered on April 25, 2008. On April 29, 2008, the debtors filed a motion seeking a declaration that all payments due from the debtors to Ocwen on their residential mortgage were current (the "Mortgage Declaration Motion"). Ocwen was properly served with the Mortgage Declaration Motion, but did not respond.[1] The May 23, 2008 order entered as a result of that motion declared the Ocwen indebtedness current and also provides:

Ordered that in the event the holder of the mortgage, the current servicer or any subsequent assignee or holder of the mortgage debt attempts to collect any of these discharged principal payments, interest, fees or expenses, such action shall be deemed to be a willful violation of the discharge injunction and contempt of the orders of this Court; and that such action shall give the right to the Debtors to pursue a proceeding before this Court for contempt and appropriate sanctions and such other state and federal statutory

remedies as may be available to the Debtors and that this Court specifically retain jurisdiction over such claim or claims.

In re Adams, Order Declaring Mortgage Payments Current, Case No. 04-03875-5-ATS (May 23, 2008). The debtors represent that they were, in fact, current at the time of the entry of the order. Ocwen contends that the debtors may not have been current at that time, but agrees that the issue is resolved, with finality, by entry of the May 23, 2008 order, which Ocwen did not appeal.

During the summer of 2008, the debtors obtained an appraisal of their residence and attempted to refinance their mortgage. They were turned down when, upon request of the proposed new lender, Ocwen transmitted a payoff statement and loan history that was replete with serious errors, most notably its report that the loan on the debtors' residence was in foreclosure. The parties agree that the loan was not then, and had never been, in foreclosure. Counsel for the debtors brought the errors to Ocwen's attention in a letter dated August 20, 2008, and requested that Ocwen correct them by 1) recalculating the loan from the date of the May 23, 2008 order; 2) correctly applying the payments made, and 3) issuing a correct payoff statement. Debtors' Mot. to Show Cause, Ex. B.

At the hearing, Ms. Adams testified that in addition to the letter her attorney sent to Ocwen, she also contacted Ocwen during the summer of 2008 to request the corrections, and Ocwen informed her that it was unaware of any discharge entered in the bankruptcy case. In response, Ms. Adams contacted her attorney and arranged to have him fax the discharge order and May 23, 2008 order to Ocwen. When Ms. Adams checked the status of her loan after having caused Ocwen to be provided with the bankruptcy documents, she determined that the loan continued to be reported in a foreclosure status. Ms. Adams again contacted her attorney, and the bankruptcy documents were faxed again. Once again, Ocwen did not respond.

Faced with Ocwen's failure to rectify its reporting, and its resulting effect on their ability to refinance their home, the debtors reopened the case and filed the motion to show cause, on September 12, 2008, to which Ocwen responded on September 30, 2008 by generally requesting a hearing "while it investigates the claims made by the [debtors]." On November 10, 2008, the hearing was continued on Ocwen's motion. Since the motion to show cause was filed, this matter has been continued no less than thirteen times upon the parties' representations that they were attempting to reach an agreement to resolve the show cause motion. Ocwen has never filed a response to the show cause motion, nor denied violation of the May 23, 2008 Order or the discharge injunction. Ocwen has not offered an explanation in mitigation of its conduct at any point in this matter. It has instead allowed its conduct to speak for itself.

## Civil Contempt

The discharge injunction set forth in 11 U.S.C. § 524 "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not

such discharge is waived." 11 U.S.C. § 524(a)(2). The May 23, 2008 order clearly deemed the debt current as of that date and specifically prohibited actions contrary to that conclusion, i.e. the collection of fees, costs and other amounts related to a non-current loan. The court ruled at the hearing that Ocwen was in contempt of both the discharge injunction and the May 23, 2008 order, and the basis of that ruling is set forth herein.

The Court of Appeals for the Fourth Circuit articulated the standard to establish civil contempt in Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000) (internal quotations omitted), as follows:

(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

Each of these elements must be shown by clear and convincing evidence. Ashcraft, 218 F.3d at 301 (construing Colonial Williamsburg Found. v. The Kittinger Co., 792 F. Supp. 1397, 1405-06 (E.D. Va. 1992), aff'd, 38 F.3d 133, 136 (4th Cir. 1994)). It is not disputed that the court's order of May 23, 2008 is a valid decree of which Ocwen had actual knowledge. The Mortgage Declaration Motion was served upon Ocwen and its counsel of record on May 8, 2008, in accordance with the certificate of service filed by debtors' counsel. The discharge order was served by the clerk's office on all parties appearing on the creditor matrix, either by mail or electronically.[2] The uncontradicted testimony of Ms. Adams is that she had a telephone conversation with a representative of Ocwen concerning her discharge and the May 23, 2008 order, and that Ocwen was supplied additional copies of the discharge order and the May 23, 2008 order by her counsel during the summer of 2008. Both Ocwen and its counsel received notice of both the discharge and the May 23, 2008 order as exhibits to the show cause motion served on them on September 12, 2008. Counsel for Ocwen began to receive electronic notice of all filings in the case on September 30, 2008. Most importantly, Ocwen did not dispute actual knowledge of both orders at the hearing.

The May 23, 2008 order was in the debtors' "favor" in that it established that their mortgage payments were deemed current and specifically set forth that a violation of the order would be sanctionable. Ocwen not only violated the terms of that decree by continuing to assess discharged principal, fees and costs, but did so, knowingly, over a prolonged period of time even after such violations were brought to its attention by: 1) debtors' counsel, 2) the female debtor, and 3) the filing of the show cause motion. The debtors' testimony indicated that they suffered harm as a result of Ocwen's violation of both the May 23, 2008 order and the discharge injunction. They were unable to refinance their home at market rates because their credit report erroneously showed their Ocwen loan in foreclosure; they incurred attorneys' fees to attempt to rectify the erroneous reporting and bring the matter to the court's attention; they incurred appraisal fees in their futile refinancing efforts; they spent time out of court trying to resolve the show cause

motion and time in court during the hearing; and their credit was damaged by the detrimental reporting.

In the specific context of an alleged violation of the discharge injunction, bankruptcy courts increasingly also assess whether a creditor's actions evidence willfulness. See, e.g., In re Dendy, 396 B.R. 171, 178 (Bankr. D.S.C. 2008); In re Cherry, 247 B.R. 176, 187 (Bankr. E.D. Va. 2000). The Dendy court held that to "hold a creditor in contempt [for violation of the discharge injunction], Debtors must demonstrate that the creditor willfully violated the discharge injunction, which is proved by showing that the creditors knew that the discharge injunction was invoked and intended the act which violated the injunction." 396 B.R. at 178; see also Workman v. GMAC Mortgage, LLC (In re Workman), 392 B.R. 1890 (Bankr. D.S.C. 2007). In Cherry, the court construed the test established by the Eleventh Circuit in In re Hardy, 97 F.3d 1384 (11th Cir. 1996), wherein that court of appeals held that under § 105, a defendant could be found in contempt for a violation of the discharge injunction if it "(1) knew that the [discharge injunction] was invoked and (2) intended the actions which violated the [injunction]." Hardy, 97 F.3d at 1390, quoted in Cherry, 247 B.R. at 187; see also Almond v. Ford Motor Co. (In re Almond), 2007 WL 1345224 at *5 (Bankr. M.D.N.C. 2007) . In contrast to the standard for civil contempt, finding a willful violation of the discharge injunction appears to rest on the lower preponderance of the evidence standard. Cherry, 247 B.R. at 188 n.18.

At present there is "no clear rule" in the Fourth Circuit as to whether an alleged violation of the discharge injunction requires willfulness on the creditor's part, but the Hardy rule has found increasing acceptance by other courts, including courts in this circuit. Almond, 2007 WL 1345224 at *5. This court accordingly assumes, but does not decide, that knowledge and intent, as outlined above, are components of a determination whether the creditor's violation of the discharge injunction was willful and in contempt of the injunction. And, as to this inquiry as well, the undisputed facts establish by not only a preponderance of the evidence but also by the higher standard of clear and convincing evidence that Ocwen knew the discharge injunction was invoked and intended its actions in violation of it.

There is no question whatsoever that Ocwen's actions establish civil contempt of the court's order. At the hearing, the court was presented with no evidence that Ocwen has taken any action to correct its records or the reports it makes to credit companies regarding the debtors' loan, either prior to or after receiving the debtors' motion to show cause. During the period from at least the filing of the debtors' motion to show cause and the hearing on May 26, 2010, the court finds that Ocwen has been in knowing, willful, and flagrant violation of both the discharge injunction and this court's May 23, 2008 order.

## Damages

A bankruptcy court has not only the inherent authority to enforce its orders, but also the statutory authority, under 11 U.S.C. § 105(a), to issue "any order, process, or judgment

that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. This authority includes the issuance of sanctions as necessary, and encompasses both the court's authority to enforce the order of May 23, 2008 and, also, "necessarily includes orders imposing sanctions for violating the discharge injunction." In re Barbour, 77 B.R. 530, 532 (Bankr. E.D.N.C. 1987); see also In re Workman, 392 B.R. at 194 (citing multiple recent cases in which bankruptcy courts invoked power under § 105(a) to sanction parties who violated the discharge injunction). Thus, while § 524 does not explicitly authorize an award of monetary damages for violation of the discharge injunction, damages for those violations — as well as violations of an order of the court — may be awarded under § 105(a). See, e.g., Workman, 392 B.R. at 195.

The duration of time over which Ocwen has maintained an apparent "disconnect" between its actions and the inevitable result of them is appalling. It has been 25 months since entry of the May 23, 2008 order and 21 months since the filing of the debtors' motion to show cause. Ocwen has taken no action to correct its balance or credit reporting. Its response to the court's request for its contentions regarding damages further illuminates Ocwen's apparent inability to grasp the seriousness of its actions and the repercussions of them. Ocwen contends that the sole damages that should be assessed against it are: $400 for the refinancing appraisal, and $1500 in attorney's fees. Ocwen "submits that any and all damages suffered by the [Adams] are fairly resolved" by payment of those sums. Ocwen contends that the debtors took "little action to mitigate any damage" because they made only one attempt to refinance the loan, even though it is ludicrous to suggest that such an effort could possibly have garnered the debtors a refinanced mortgage on more attractive terms, or been anything other than a fruitless and humiliating exercise.

In addition, Ocwen says it "is and will" update its credit reports and give the debtors a copy of the email communication showing that it has done so. That Ocwen still *proposes* to correct its reporting, and has not *yet* given proof of having done so, is mind-boggling. As the final component of Ocwen's proposed resolution of this matter, it would restate the principal balance of the loan as $75,000 as of June 1, 2010 and modify the terms of the loan to provide an interest rate of 5% *beginning* June 1, 2010. In accordance with its proposal, Ocwen would retain the original, high interest rate of 10.8% over the almost-two years in which it erroneously reported the debtors' mortgage as in foreclosure, which, in effect, prohibited the debtors' refinancing at market levels.

Ocwen does not dispute that it has, from late 2007 through virtually all of 2008 and well into 2009, reported the Adams' mortgage as being in foreclosure, despite the fact that no foreclosure proceeding ever was commenced. The statements Ocwen sent to the debtors show that it has regularly assessed foreclosure costs and fees, and applied the debtors' payments to those costs and fees instead of to the principal. *Most recently,* Ocwen informed the Adams by letter dated May 26, 2010, in response to the Adams' inquiry regarding the credit history of their loan over the most recent 12 months, that it had reported the loan as in foreclosure for May, June, July and August of 2009. All during that time, Ocwen purportedly was working with the debtors to modify their loan terms — as a result of the *original* erroneous reporting. Ocwen either intended to hold the debtors

hostage to its glacial (and unfruitful) negotiations, or concluded that it could knowingly disregard the responsibilities with which it was charged by both the Bankruptcy Code and the May 23, 2008 order of this court. That it did so, with actual knowledge, for such a prolonged period of time is especially egregious. Ocwen's cavalier attitude toward the discharge injunction, the terms of an order of this court, and the effect of its actions on the debtors is wholly unacceptable. The fact that Ocwen is unwilling to acknowledge the seriousness of this matter even today carries significant weight with the court. As the court informed the parties at the conclusion of the show cause hearing, sanctions are warranted in this matter. It is obvious that only significant monetary sanctions will get Ocwen's attention.

The court now turns to the appropriate sanctions for such violations. The trustee's brief, in which he describes Ocwen's proffer of damages as "woefully inadequate," recommends entry of an order awarding as compensatory damages a declaration that the debtors' debt to Ocwen is satisfied in full and cancelling Ocwen's lien, along with attorney fees and a punitive component of $1000 Although the court will not adopt that recommendation in whole, it will take guidance from it.

## 1) **Compensatory Damages**

Ocwen has acknowledged that the debtors are entitled to reimbursement of $400 for the appraisal in connection with the attempted 2008 refinancing, and $1500 for attorney's fees. The court's very conservative estimate of the value of the debtors' time trying to sort through and correct Ocwen's statements, together with the value of their time in court and compensation for the embarrassment of having false, defamatory information published about them, supports a total award of $2500 in compensatory damages, plus attorney's fees of $1500. Ocwen also will be assessed attorney's fees payable to the trustee for his preparation and court time in the amount of $750.

An accurate determination of the balance owing Ocwen by the debtors is essential to finally resolve the issues between the parties. The court requested, and received, contentions by both parties concerning the present mortgage balance. The debtors supplied their counsel's affidavit which claimed that the correct balance, using the contract 10.8% rate, through April 30, 2010, was $71,954. Using a 6% interest rate in 2008, a 5.5% interest rate in 2009 and a 5% interest rate in 2010 yields a balance of $63,702 according to the debtor.

Ocwen submitted the affidavit of Manager Trial Preparation/Discovery, Chomie Neil. The affidavit indicates that Ocwen contends that the balance due on the mortgage as of July 1, 2010, is $77,360.13. Ocwen applied the contract rate of interest of 10.8% in its calculations.

Inasmuch as the 10.8% contract rate is above market, in accordance with the unchallenged proffer of debtor's counsel, and that the continued improper reporting on the part of Ocwen prohibits the debtors from refinancing the loan at market rate, the court will modify the interest rate as part of the debtors' compensatory damages to 6% — the

highest interest rate offered by the debtors at the hearing — as a reasonable market rate for the time period of May 23, 2008 through July 1, 2010. Accepting Ocwen's principal amount owing as of May 23, 2008 of $76,426.43, and applying a 6% interest rate with a $831.88 monthly payment,[1] with $50.59 going into escrow, the approximate payoff on July 1, 2010, would be $65,373.12. The court will, therefore, set the balance owing on July 1, 2010 at $65,373.12.

## 2) **Punitive Damages**

The court finds it not only appropriate to award punitive damages, but necessary. Ocwen has given every indication that it is and will remain indifferent to the statutory significance of the discharge injunction and to the express terms of the May 23, 2008 order, unless it is compelled to take note. See Cherry, 247 B.R. 176, 189-90 (discussing cases within the Fourth Circuit in which punitive damages for contempt, and violation of the discharge injunction, were in issue). As the Cherry court points out, the standard by which courts assess the propriety of an award of punitive damages varies, but tends to require some indication of "egregious conduct," "malevolent intent," or "clear disregard of the bankruptcy laws" — in other words, some element indicative of a "specific intent to violate an order or discharge injunction." Under any of these measurements, Ocwen's intentional, unfounded, prolonged violation of the discharge injunction and this court's order warrants punitive sanctions.

An appropriate measure of punitive damages for Ocwen's violation of the discharge injunction and the court's order of May 23, 2008 is a sanction in the amount of $66,300. This amount represents $100 per day from September 12, 2008, which is the date on which Ocwen was served with the debtors' motion to show cause, through the date of entry of this order. These damages will not accrue during the fourteen days following the date of entry of this order, but will resume, if necessary, at $100 per day, as outlined below, if Ocwen does not fully comply with the terms that follow. A punitive sanction of $100 per day for Ocwen's actions over the duration of this matter is commensurate with its offense. The significant total derives from the duration of the offense, which was decidedly within Ocwen's own control.

Accordingly, no later than fourteen (14) days from the date of this order, Ocwen Loan Servicing, LLC shall pay FIFTEEN HUNDRED DOLLARS ($1500) in attorney's fees and expenses to DOUG WICKHAM, counsel for the debtors, P.O. Box 527, Raleigh, NC, 27602-0527.

No later than fourteen (14) days from the date of this order, Ocwen Loan Servicing, LLC shall pay SEVEN HUNDRED FIFTY DOLLARS ($750) in attorney's fees and expenses to the standing chapter 13 trustee in this case, JOHN F. LOGAN, P.O. Box 61039, Raleigh, NC, 276611-039.

No later than fourteen (14) days from the date of this order, Ocwen Loan Servicing, LLC shall pay TWO THOUSAND FIVE HUNDRED DOLLARS ($2,500) in compensatory

damages and expenses to CRAIG L. AND MONICA L. ADAMS, 2150 Highway 97, Zebulon, NC 27597.

No later than fourteen (14) days from the date of this order, Ocwen Loan Servicing, LLC shall pay SIXTY-SIX THOUSAND THREE HUNDRED DOLLARS ($66,300), as a punitive sanction, to CRAIG L. AND MONICA L. ADAMS, 2150 Highway 97, Zebulon, NC 27597.

No later than fourteen (14) days from the date of this order, Ocwen Loan Servicing, LLC shall provide proof to the debtors' counsel, the trustee, and to the court that the following actions have been taken:

1) Ocwen has reported to all three major credit reporting companies that the debtors' loan with Ocwen was in bankruptcy from the debtors' petition date through the date of discharge; was current from the date of discharge; and remains current as of the date of this order;

2) Ocwen has adjusted its records to reflect that the debtors have a principal balance remaining, as of July 1, 2010, of $65,373.12, to be paid at 6% interest, fixed rate, over the remaining life of the loan.

In the event that Ocwen fails to comply with the payment of any of the damages awarded herein within fourteen (14) days of the date of this order, said sum shall be applied as a setoff against the amount owing to Ocwen and secured by the mortgage. Upon failure of Ocwen to comply with such payments, the debtors will supply the court with a verified statement attesting to such failure and the court will provide the debtors with an order to be recorded in the Wake County Register of Deeds Office setting forth the set off and the new balance.

For each day after the expiration of fourteen (14) days after the date of entry of this order, if any provision of this court's order remains unsatisfied, additional punitive damages will be assessed against Ocwen in the amount of $100 per day, payable to the Clerk of Court, 300 Fayetteville Street, Suite 209, P.O. Box 1441, Raleigh, NC 27602, until all terms of this order are satisfied.

**SO ORDERED.**