1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11

BILLIE JEAN FORD,

CASE NO. 10cv1660-WQH-NLS

12

Plaintiff,

ORDER

vs.

13

CENTRAL LOAN ADMINISTRATION
& REPORTING, a/k/a CENLAR;

14

OCWEN LOAN SERVICING, a/k/a
OCWEN; MORTGAGE ELECTRONIC

15

REGISTRATION SYSTEMS, INC., a/k/a
MERS,

16
17

Defendants.

HAYES, Judge:

18
19

The matters before the Court are (1) the Motion for Default Judgment filed by Plaintiff

20

(ECF No. 8); (2) the Motion to Dismiss filed by Defendants Ocwen Loan Servicing LLC

21

("Ocwen") and Mortgage Electronic Registration Systems, Inc. ("MERS") (ECF No. 9); (3)

22

the Motion to Dismiss filed by Defendant Central Loan Administration & Reporting, a/k/a

23

Cenlar ("Cenlar") (ECF No. 19); and (4) the Application for Leave of Absence filed by

24

Plaintiff (ECF No. 22).

**I.    Background**

25
26

On August 9, 2010, Plaintiff Billie Jean Ford, proceeding pro se, initiated this action

by filing a Complaint.  (ECF No. 1).

27
28

On August 30, 2010, Plaintiff filed an Amended Complaint.  (ECF No. 4).  The

Amended Complaint alleges "federal court jurisdiction under the federal laws represented by

1    TILA, RESPA, HOEPA, the Wire Act, the Mail Fraud Act, Bank Fraud, and RICO." *Id.* ¶ 6.

2    The Amended Complaint also alleges that diversity jurisdiction exists pursuant to 28 U.S.C.

3    § 1332.  The Amended Complaint alleges that Plaintiff is the owner of "four condominium

4    units, located in the state of Alabama," which are "rental properties."  *Id*. ¶¶ 11-12.  The

5    Amended Complaint contains a section entitled, "RESPA Violations," which sets forth

6    allegations related to qualified written requests ("QWR") sent by Plaintiff to Defendant Ocwen

7    on December 28, 2009 and January 27, 2010.  *Id*. at 12.  The Amended Complaint contains a

8    second section entitled, "Unlawful Foreclosure," which alleges that Defendants violated

9    "TILA, RESPA, HOEPA, federal and state Bank Fraud law, and others" by foreclosing on

10   Plaintiff's Alabama properties.  *Id*. at 15, 17, 21.  The Amended Complaint contains other

11   sections entitled,  "Slander of Title," "Joint Venture Liability," "Unjust Enrichment,"

12   "Conspiracy," "Breach of Fiduciary Duty," "Quiet Title," and "Injunctive Relief."  *Id*. at 20-

13   24.  Each of these sections contain allegations related to the foreclosure and either sale or

14   attempted sale of the Alabama properties.

15          On October 13, 2010, Plaintiff filed the Motion for Default Judgment.  (ECF No. 8).

16   Plaintiff states that "service of process was perfected on ... September 8 and 10, 2010; to date

17   the parties have failed to answer."  *Id*. at 1.

18          On October 15, 2010, Ocwen and MERS filed a Motion to Dismiss for improper venue,

19   or in the alternative, for failure to state a claim upon which relief can be granted.  (ECF No.

20   9).  Ocwen and MERS contend that because the subject matter of this case concerns real

21   property located in Alabama, "this Court does not have jurisdiction over this matter."  (ECF

22   No. 9-1 at 2).  Ocwen and MERS contend that the Amended Complaint does not satisfy the

23   pleading standards of Federal Rule of Civil Procedure 8; the statute of limitations has expired

24   for any federal law claims for disclosure violations at the time of loan origination; and the

25   RESPA claim for failure to respond to the QWR should be dismissed because "Plaintiff cannot

26   demonstrate that [she] suffered damages as a result of any purported violation of RESPA."  *Id*.

27   at 8.

28          On October 25, 2010, Plaintiff filed a response in opposition Ocwen and MERS'

- 2 -                                                    10cv1660-WQH-NLS

1   Motion to Dismiss.  (ECF No. 10).  Plaintiff contends that venue is proper in this district, and,

2   construed liberally, the Amended Complaint complies with the pleading standards of Rule 8.

3   On October 26, 2010, Ocwen and MERS filed an opposition to the Motion for Default

4   Judgment (ECF No. 11), and on November 8, 2010, Cenlar filed an opposition to the Motion

5   for Default Judgment (ECF No. 18).  Defendants contend that the Motion for Default Judgment

6   is untimely because default has not been entered by the Clerk.  Defendants contend that if the

7   Court were inclined to enter default, Defendants satisfy the factors governing whether a default

8   should be set aside.

9   On November 8, 2010, Cenlar filed a Motion to Dismiss.  (ECF No. 19).  Cenlar

10  contends that the Amended Complaint fails to comply with the applicable pleading standards;

11  RESPA and TILA only apply to consumer loans and not to loans that are for business or

12  commercial purposes, such as the loans at issue in this case; and the Amended Complaint

13  otherwise fails to state a claim upon which relief may be granted.

14  On November 19, 2010, Plaintiff filed a reply in support of the Motion for Default

15  Judgment.  (ECF No. 21).

16  On November 19, 2010, Plaintiff filed an "Application for Leave of Absence."  (ECF

17  No. 22).  Plaintiff "seek[s] leave" from "December 7, 2010 through March 9, 2011," because

18  "[t]ickets to the East Coast had been purchased prior to this action along with a trip abroad to

19  celebrate Plaintiff's birthday in Paris, France in late February."  *Id*. at 1-2.

20  **II.    Discussion**

21       **A.    Motion for Default Judgment**

22  Rule 55(a) of the Federal Rules of Civil Procedure requires that the clerk of the court

23  enter default "when a party against whom a judgment for affirmative relief is sought has failed

24  to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ.

25  P. 55(a).  Rule 55(b)(2) provides that a court may grant a default judgment after default has

26  been entered by the clerk of the court.  Rule 55(c) provides that a court may set aside a default

27  for "good cause shown."  Fed. R. Civ. P. 55(c).

28       Plaintiff failed to request that the Clerk enter default prior to filing the Motion for

- 3 -                                     10cv1660-WQH-NLS

1   Default Judgment, as required by Rule 55.  *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir.

2   1986) (describing "the two-step process required by Rule 55").  For this reason alone, the

3   Motion for Default Judgment may be denied.  *Cf. Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir.

4   1995) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by

5   the rules of procedure.").  Despite Plaintiff's failure to follow the two-step process required

6   by Rule 55, the Court will consider whether Defendants have shown good cause for setting

7   aside default.

8          "The [Rule 55] good cause analysis considers three factors: (1) whether [defendant]

9   engaged in culpable conduct that led to the default; (2) whether [defendant] had a meritorious

10  defense; or (3) whether reopening the default judgment would prejudice [plaintiff]."  *Franchise*

11  *Holding II, LLC. v. Huntington Rest. Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004)

12  (quotation omitted); *see also id*. at 926 ("As these factors are disjunctive, the district court was

13  free to deny the motion [to set aside default] if any of the three factors was true.").  In

14  determining whether to enter default judgment, a court considers the three "good cause"

15  factors, as well as the amount of money at stake, the sufficiency of the complaint, the

16  possibility of disputes to any material facts in the case, and the public policy favoring

17  resolutions of cases on the merits.  *See Eitel*, 782 F.2d at 1471-72.  "[T]he general rule is that

18  default judgments are ordinarily disfavored.  Cases should be decided upon their merits

19  whenever reasonably possible."  *Id*. at 1472.

20          **1.     Culpable Conduct**

21          "[A] defendant's conduct is culpable if he has received actual or constructive notice of

22  the filing of the action and *intentionally* failed to answer."  *TCI Group Life Ins. Plan v.*

23  *Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001); *see also id*. at 698 ("[W]e have typically held

24  that a defendant's conduct was culpable ... where there is no explanation of the default

25  inconsistent with a devious, deliberate, willful, or bad faith failure to respond.").

26          Ocwen and MERS submitted an affidavit from their counsel stating that Ocwen and

27  MERS did not file an answer or response to the Amended Complaint because of counsel's

28  "mistaken belief that the Plaintiff had not properly effected service of process of the complaint

1    on either Ocwen or MERS." (October 26, 2010 Abbott Decl. ¶ 2, ECF No. 11-1). Cenlar

2    submitted an affidavit from its former counsel stating that Cenlar did not file an answer or

3    response to the Amended Complaint because counsel "misunderstood that Plaintiff had not

4    properly served Defendants and [he] believed Cenlar was represented by other counsel."

5    (November 5, 2010 Abbott Decl. ¶ 3, ECF No. 18). The Court finds that there is no evidence

6    or indication in the record of culpable conduct which led to the default.

7                        **2.      Meritorious Defense**

8          The burden on a defaulted defendant to show that it has a meritorious defense "is not

9    extraordinarily heavy." *TCI Group*, 244 F.3d at 700; *see also id*. (stating that defendant

10   satisfied this factor when defendant "assert[s] a ... defense whose litigation ... would not be a

11   wholly empty exercise"). Having reviewed the Amended Complaint and the Motions to

12   Dismiss, the Court finds that Defendants have shown that they have a sufficiently meritorious

13   defense to warrant denying default judgment and default being set aside.

14                       **3.      Prejudice to Plaintiff**

15         "To be 'prejudicial,' the setting aside of a [default] judgment must result in greater harm

16   than simply delaying resolution of the case. Rather, the standard is whether plaintiff's ability

17   to pursue his claim will be hindered." *Id*. at 701 (quotation omitted). "[M]erely being forced

18   to litigate on the merits cannot be considered prejudicial for purposes of lifting a default

19   judgment." *Id*.; *see also id*. ("[T]o be considered prejudicial, the delay must result in tangible

20   harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for

21   fraud or collusion.") (quotation omitted).

22         Plaintiff contends that she will be prejudiced by a delay in this case because Defendants

23   "have continued pursuing sales ... of ... two properties that Plaintiff owns" and Plaintiff "stands

24   to be substantially monetarily harmed." (ECF No. 8-1 at 4).

25         If Plaintiff ultimately prevails in this case, Plaintiff will have the opportunity to recover

26   damages, including any damages which may have accrued during the delay caused by

27   Defendants' failure to timely respond to the Amended Complaint. The Court finds that the

28   setting aside of default will not cause Plaintiff prejudice beyond "simply delaying resolution

1   of the case." *TCI Group*, 244 F.3d at 701.

2   **4.      Summary**

3   Even if Plaintiff had properly requested that the Clerk enter default prior to moving for

4   default judgment, the Court finds that Defendants have shown good cause why default should

5   be set aside pursuant to Rule 55(c).  The Court further finds that the remaining *Eitel* factors,

6   including the substantial amount of money at stake and "the public policy favoring resolutions

7   of cases on the merits," favor denying the Motion for Default Judgment pursuant to Rule 55(b).

8   *Eitel*, 782 F.2d at 1472.

9   The Motion for Default Judgment is denied.

10   **B.      Motions to Dismiss**

11   **1.      Standard of Review**

12   Pro se complaints are held to a less stringent standard than formal pleadings by lawyers.

13   *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).  A pro se plaintiff's complaint must be

14   construed liberally to determine whether a claim has been stated.  *See Zichko v. Idaho*, 247

15   F.3d 1015, 1020 (9th Cir. 2001).  However, a pro se litigant's pleadings still must meet some

16   minimum threshold in providing the defendant with notice of what it is that it allegedly did

17   wrong.  *See Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995); *see also Ghazali*,

18   46 F.3d at 54 ("Although we construe pleadings liberally in their favor, pro se litigants are

19   bound by the rules of procedure.").

20   Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim

21   upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6)

22   is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support

23   a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

24   1990).  To sufficiently state a claim to relief and survive a Rule 12(b)(6) motion, a complaint

25   "does not need detailed factual allegations" but the "[f]actual allegations must be enough to

26   raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

27   555 (2007).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

28   requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

1    of action will not do." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).  When considering a motion to

2    dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*,

3    --- U.S. ----, 129 S. Ct. 1937, 1950 (2009).  However, a court is not "required to accept as true

4    allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

5    inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "In sum,

6    for a complaint to survive a motion to dismiss, the non-conclusory factual content, and

7    reasonable inferences from that content, must be plausibly suggestive of a claim entitling the

8    plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations

9    omitted).

10                    **2.       RESPA Claim for Failure to Respond to QWR**

11           The Real Estate Settlement Procedures Act ("RESPA") provides that the statute "does

12    not apply to credit transactions involving extensions of credit ... primarily for business, [or]

13    commercial ... purposes."  12 U.S.C. § 2606(a); *see also Gusenkov v. Residential Mortg.

14    Capital, Inc.*, No. 2:10cv1421, 2010 WL 3127045, at *3-*4 (E.D. Cal. Aug. 9, 2010) (setting

15    forth the factors courts consider in deciding whether a loan is for a business or a personal

16    purpose within the meaning of RESPA).  The Amended Complaint alleges that the properties

17    at issue are "rental properties."  (ECF No. 4 ¶ 12).  To the extent that the loan transactions at

18    issue were primarily for business or commercial purposes, the RESPA claim must be

19    dismissed.

20           Even if the loan transactions were not for business or commercial purposes, in order to

21    survive a motion to dismiss, a RESPA claim must adequately plead damages.  If a loan servicer

22    fails to comply with the provisions of RESPA regarding responding to a QWR, a borrower is

23    be entitled to "any actual damages to the borrower as a result of the failure" and "any

24    additional damages, as the court may allow, in the case of a pattern or practice of

25    noncompliance with the requirements of [§ 2605]."  12 U.S.C. § 2605(f)(1).  "Numerous courts

26    have read Section 2605 as requiring a showing of pecuniary damages to state a claim." *Molina

27    v. Wash. Mut. Bank*, No. 09cv894, 2010 WL 431439, at *7 (S.D. Cal. Jan. 29, 2010)

28    (collecting cases); *see also Eronini v. JP Morgan Chase Bank NA*, No. 08-55929, 2010 WL

737841, at *1 (9th Cir. Mar. 3, 2010) ("The district court properly dismissed the action because Eronini suffered no damages as a result of the alleged RESPA violation."). "This pleading requirement has the effect of limiting the cause of action to circumstances in which plaintiff can show that a failure to respond or give notice has caused them actual harm." *Shepherd v. Am. Home Mortg. Servs., Inc.*, No. 09-1916, 2009 WL 4505925, at *3 (E.D. Cal. Nov. 20, 2009) (citation omitted). Courts "have interpreted this requirement liberally." *Yulaeva v. Greenpoint Mortg. Funding, Inc.*, No. 09-1504, 2009 WL 2880393, at *15 (E.D. Cal. Sept. 9, 2009) (plaintiff sufficiently pled actual damages where plaintiff alleged she was required to pay a referral fee prohibited under RESPA).

The Amended Complaint requests compensatory damages in the amount of $500,000, as well as punitive damages, for Defendants' alleged failure to adequately respond to Plaintiff's QWR. The Amended Complaint alleges that Defendants wrongfully foreclosed and sold Plaintiff's properties, but the Amended Complaint does not adequately allege that the loss of Plaintiff's properties was caused by the failure to respond to the QWR. *See Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009) ("Allen only offers the conclusory statement that 'damages consist of the loss of plaintiff's home together with his attorney fees.' He has not actually attempted to show that the alleged RESPA violations caused any kind of pecuniary loss (indeed, his loss of property appears to have been caused by his default)."). Even reading the Amended Complaint liberally, Plaintiff fails to plead non-conclusory factual allegations indicating how she was actually damaged by the alleged failure to fully respond to the QWR.

In addition to actual damages, a plaintiff may recover statutory damages under RESPA. To recover statutory damages, a plaintiff must plead a pattern or practice of noncompliance with RESPA. *See* 12 U.S.C. § 2605(f)(1)(b); *see also Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) (RESPA claim deficiently pled because "Plaintiffs flatly claim a pattern of noncompliance but state no facts other than the assurance that at trial they will present other customers who also did not receive QWR responses from Defendant."); *see also Garvey v. Am. Home Mortg. Servicing, Inc.*, No. CV-09-973, 2009 WL 2782128, at

1   *2 (D. Ariz. Aug. 31, 2009) (same).

2          The Amended Complaint alleges that "Ocwen is considered to be infamous for ignoring

3   grace periods, misapplying and failing to apply funds, and improperly charging late fees;

4   frequently compound this problem by then reporting to the credit bureaus." (ECF No. 4 ¶ 49

5   (quotation omitted)).  Plaintiff attaches to the Amended Complaint a copy of an order dated

6   July 7, 2010 issued by the United States Bankruptcy Court for the Eastern District of North

7   Carolina finding Ocwen in contempt of a court order.  The July 7, 2010 order and the

8   allegations of Ocwen's alleged wrongdoing do not specifically relate to a pattern and practice

9   of RESPA violations.  Accordingly, these allegations are insufficient to plausibly show a

10  pattern and practice of RESPA violations by Ocwen or any other Defendants.

11         The Court concludes that Plaintiff's RESPA claim for damages for failure to respond

12  to the QWR is insufficiently pled.

13         The Motions to Dismiss the RESPA claim for failure to respond to the QWR are

14  granted.

15                    **3.      Remaining Claims**

16                    **a.      Jurisdiction**

17         The "local action" doctrine provides that "[t]he federal district courts' jurisdiction over

18  actions concerning real property is generally coterminous with the states' political boundaries."

19  *United States v. Byrne*, 291 F.3d 1056, 1060 (9th Cir. 2002) (citing *Columbia River Packers'*

20  *Ass'n v. McGowan*, 219 F. 365, 377 (9th Cir. 1914)).  When "the remedies the [plaintiff] seeks

21  would act directly upon the land itself, jurisdiction is properly exercised in the state where the

22  land is situated." *Id*.

23         Apart from Plaintiff's dismissed claims related to Defendant's alleged failure to

24  adequately respond to the QWR, the remaining claims in the Amended Complaint relate

25  primarily to Plaintiff's claim that Defendants wrongfully foreclosed and sold Plaintiff's

26  properties located in Mobile County, Alabama.  Among other requests for relief, Plaintiff seeks

27  to quiet title to the properties and for an order from the Court "[d]eclar[ing] that the Sale Under

28  Power and/or foreclosure and/or attempt to foreclose on Plaintiff's properties [is] illegal and

1  void and that the same be permanently enjoined from past, current and/or future attempts."

2  (ECF No. 4 at 26).

3        This Court is without jurisdiction to grant Plaintiff remedies which act directly upon

4  real property located in Alabama. *See Byrne*, 291 F.3d at 1060. Only a court in Alabama may

5  grant such remedies. Although Plaintiff also seeks monetary damages, Plaintiff's action is

6  primarily a "local action," and must be brought in the State where the property is located. *See*

7  *Prawoto v. PrimeLending*, 720 F. Supp. 2d 1149, 1158 (C.D. Cal. 2010) ("Prawoto seeks

8  rescission of a mortgage transaction that created a security interest in land located in Texas,

9  and termination of the security interest.... The fact that the complaint also seeks money

10 damages does not undermine the conclusion that the action is local.... Prawoto seeks a

11 combination of money damages and rescission or other termination of a contract granting

12 PrimeLending a security interest in the Texas property, due primarily to a threat that

13 PrimeLending will foreclose on the property. The main relief sought is the vesting of title to

14 the property in Prawoto free of liens.... Prawoto's action, therefore, is local."). Accordingly,

15 the Court concludes that the Court is without jurisdiction to adjudicate Plaintiff's claims.

16               **b.      Whether to Dismiss or Transfer Plaintiff's Action**

17        Having concluded that the Court lacks jurisdiction over this action due to the local

18 action doctrine, the Court must determine whether to dismiss the action or transfer the action

19 to another court pursuant to 28 U.S.C. § 1631. *See id*. at 1160-61 (sua sponte transferring

20 action pursuant to § 1631 to the United States district court where the property was located);

21 *cf. Cruz-Aguilera v. INS*, 245 F.3d 1070, 1074 (9th Cir. 2001) ("The transfer of civil actions

22 among federal courts to cure jurisdictional defects is governed by 28 U.S.C. § 1631."); *Hays*

23 *v. Postmaster Gen. of U.S.*, 868 F.2d 328, 331 (9th Cir. 1989) ("Although Hays did not move

24 the court to transfer the case, we have held that a motion to transfer is unnecessary because of

25 the mandatory cast of section 1631's instructions.") (quotation omitted). Section 1631

26 provides: "Whenever a civil action is filed in a court ... and that court finds that there is a want

27 of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any

28 other such court in which the action ... could have been brought at the time it was filed...." 28

1  U.S.C. § 1631.  A § 1631 transfer is appropriate if "(1) the transferring court lacks jurisdiction;

2  (2) the transferee court could have exercised jurisdiction at the time the action was filed; and

3  (3) the transfer is in the interest of justice." *Cruz-Aguilera*, 245 F.3d at 1074.

4        As discussed above, this Court lacks jurisdiction over Plaintiff's action.  The United

5  States District Court for the Southern District of Alabama, whose boundaries encompass the

6  properties at issue in this case, could have exercised jurisdiction over this action at the time it

7  was filed.  *See Byrne*, 291 F.3d at 1060; *see also* 28 U.S.C. § 1391 (actions may be brought

8  in "a judicial district in which ... substantial part of property that is the subject of the action is

9  situated").  The sole remaining issue is whether transfer is "in the interest of justice."

10  *Cruz-Aguilera*, 245 F.3d at 1074.

11        "When determining whether transfer is in the interest of justice, courts have considered

12  whether the failure to transfer would prejudice the litigant, whether the litigant filed the

13  original action in good faith, and other equitable factors."  *Id.* (citation omitted).  "Normally

14  transfer will be in the interest of justice because normally dismissal of an action that could be

15  brought elsewhere is 'time-consuming and justice-defeating.'"  *Miller v. Hambrick*, 905 F.2d

16  259, 262 (9th Cir. 1990) (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962)).

17        There is no indication from the record that Plaintiff filed the action in this Court in bad

18  faith.  In response to the Motion to Dismiss for improper venue, Plaintiff requests that the

19  Court transfer, rather than dismiss, the action.  (ECF No. 10 at 9 ("[S]hould this Court find that

20  venue is improper, although Plaintiff believes she filed in the appropriate Court under the

21  circumstances, Plaintiff [m]oves for a transfer [to] where this Court deems would be 'in the

22  interest of justice' rather than dismiss.")).  The Court finds that dismissing this action would

23  be "time-consuming and justice-defeating."  *Goldlawr*, 369 U.S. at 467.  In the interest of

24  justice, this action shall be transferred to the United States District Court for the Southern

25  District of Alabama, Mobile Division pursuant to 28 U.S.C. § 1631.

26        **C.**    **Application for Leave of Absence**

27        On November 19, 2010, Plaintiff filed an "Application for Leave of Absence" from

28  December 7, 2010 through March 9, 2011.  (ECF No. 22).  At the time Plaintiff filed the

1   Application, the Motion for Default Judgment and Ocwen and MERS' Motion to Dismiss were

2   fully briefed.   Plaintiff's response to Cenlar's Motion to Dismiss was due no later than

3   November 29, 2010, which is a week before the beginning of Plaintiff's requested "leave of

4   absence" period.   Accordingly, the Application for Leave of Absence has no bearing on the

5   motions addressed in this Order.

6   **III.    Conclusion**

7          IT IS HEREBY ORDERED that the Motion for Default Judgment is DENIED.  (ECF

8   No. 8).  The Motions to Dismiss are GRANTED in part and DENIED in part.  (ECF Nos. 9,

9   19).  The Motions to Dismiss the RESPA claim for failure to respond to the QWR are granted,

10  and that claim is DISMISSED without prejudice.  In all other respects, the Motions to Dismiss

11  are denied.

12         IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 1631, the Clerk of the Court

13  shall TRANSFER this action to the United States District Court for the Southern District of

14  Alabama, Mobile Division.

15  DATED:  January 6, 2011

16                                                      **WILLIAM Q. HAYES**
17                                                      United States District Judge

18

19

20

21

22

23

24

25

26

27

28