**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **BILLIE JEAN FORD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **CIVIL ACTION 11-0017-WS-C** |
| | ) |
| **CENTRAL LOAN ADMINISTRATION,** | ) |
| *et al.,* | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

This matter comes before the Court on defendants' Renewed Motion to Dismiss (doc. 29), plaintiff's Motion for Leave to Amend Complaint (doc. 40), and plaintiff's Motion to File Out of Time Response (doc. 41).  All three Motions are ripe for disposition.[1]

**I.      Relevant Procedural and Factual Background.**

This litigation remains mired in the pleadings stage, but it has already been a long, strange trip.  Plaintiff, Billie Jean Ford, proceeding *pro se*, initially filed the Complaint in August 2010 in the U.S. District Court for the Southern District of California.  The Amended Complaint (doc. 4) filed on August 30, 2010 rattles off a laundry list of causes of action against three named defendants, to-wit: Cenlar Agency, Inc., Ocwen Loan Servicing, LLC, and Mortgage Electronic Registration Systems, Inc.

The particular facts underlying the many claims enumerated in Ford's Amended Complaint are often difficult to discern; however, the basics of the parties' dealings and the nature of the dispute are adequately specified.  Ford alleges that she is a California resident who,

---

[1]      As an initial matter, plaintiff's Motion to File Out of Time Response (doc. 41) is **moot**.  By Order entered on June 8, 2011, the undersigned authorized plaintiff to file a response to the Motion to Dismiss on or before June 28, 2011.  (*See* doc. 39, at 3.)  Plaintiff in fact filed her Response (doc. 43) on that June 28 deadline, and thus was not tardy.  Because plaintiff filed her response <u>within</u> the authorized timeframe in the court-ordered briefing schedule, she need not obtain leave to file that very response <u>outside</u> such timeframe.

at all relevant times, owned four rental condominium units (the "Units") at the Summerville Court complex in Mobile, Alabama. (Doc. 4, ¶ 11.) According to the Amended Complaint, the original lender for the Units was a non-party called Taylor, Bean & Whitaker, but that lender "closed its doors" in August 2009. (*Id.*, ¶¶ 12-13.) Thereafter, she was notified telephonically (but not in writing) that defendant Cenlar had become the servicer on the loans, that payments should be made to Cenlar, and that "the Alabama properties were transferred to" defendant Ocwen. (*Id.*, ¶¶ 14-15.) After that, plaintiff's pleading is not clear as to what happened. The Amended Complaint alleges a number of generic wrongful acts purportedly committed by defendants "across the country," without linking them to the Units and Ford's circumstances, and makes general statements of alleged violations, without specifying what exactly defendants did that Ford finds objectionable. (*Id.*, ¶¶ 18-30, 48-49.)

Construing the Amended Complaint liberally in light of plaintiff's *pro se* status, the following allegations of wrongdoing appear therein: (i) defendants sent demand letters to Ford's tenants in the Units, rather than notifying Ford in California (*id.*, ¶¶ 31-35); (ii) plaintiff does not know whether foreclosure sales have or have not occurred as to the Units because defendants did not tell her (*id.*, ¶¶ 36, 54-55); (iii) any sale would have been fraudulent, void and otherwise illegal because defendants lacked the right to foreclose on the Units (*id.*, ¶¶ 56-65); (iv) defendants negligently ejected one or more tenants from Ford's Units (*id.*, ¶ 71); and (v) by their actions, defendants have "caused a cloud to be placed on the title of the" Units (*id.*, ¶ 80). On the basis of these and other allegations, the 27-page Amended Complaint purports to assert claims against all three defendants collectively for violation of the Real Estate Settlement Procedures Act ("RESPA"), unlawful foreclosure, negligence, wantonness, slander of title, joint venture liability, unjust enrichment, conspiracy, breach of fiduciary duty, and quiet title.[2] According to

---

[2] In various places in the Amended Complaint, Ford also name-checks an array of federal statutory provisions, including the Truth in Lending Act ("TILA"); Regulations X and Z; the federal criminal mail fraud, wire fraud, and bank fraud statutes; the Home Ownership and Equity Protection Act ("HOEPA"); the Uniform Commercial Code; the Racketeer Influenced and Corrupt Organizations Act; the Fair Debt Collection Practices Act; and Alabama and California statutes governing unfair and deceptive business practices. (*Id.* at 2, 9, 26.) The Amended Complaint also references (in cursory fashion) common-law causes of action for "Actual Fraud, Constructive Fraud, Fraud in the Factum, Fraud in the Execution, Breach of Contract, Gross Negligence, Lender Negligence, Willful and Reckless Negligence, Negligent Acceptance, [and] Negligent Training." (*Id.* at 2.) None of these claims or causes of action are (Continued)

the Amended Complaint, plaintiff seeks relief in the form of a declaration that any foreclosure sales that may have been performed on the Units are "illegal and void," an injunction barring defendants from further foreclosure sale activities (if any remain to be performed) on the Units, a declaration that the underlying loan transaction is void for unspecified reasons, an award of damages for unspecified unfair/deceptive business practices and violations of RESPA and the Fair Debt Collection Practices Act, an award of compensatory damages of at least $500,000 per defendant, punitive damages, and so on. (*Id.* at 26-27.)

Given that the Units are all located in the Southern District of Alabama, it is no surprise that the Southern District of California transferred this action to this District Court pursuant to 28 U.S.C. § 1631 via Order (doc. 23-1) entered by U.S. District Judge William Q. Hayes on January 6, 2011. Contemporaneously with the transfer, Judge Hayes denied Ford's request for entry of default judgment against defendants because (a) she had not sought to have the Clerk of Court enter default before she moved for default judgment, and (b) defendants had in any event shown good cause for setting aside any such default under Rule 55(c), Fed.R.Civ.P. The January 6 Order likewise dismissed Ford's RESPA claims (but only her RESPA claims) as failing to state a cognizable claim for want of pattern-or-practice allegations.

After the transfer to this District Court, defendants renewed their Motion to Dismiss. This action languished here for a period of more than four months, with no perceptible progress, because plaintiff ignored, disregarded or otherwise failed to respond to the Motion and various court orders and directives. (*See* docs. 30 – 34, 36.) Eventually, plaintiff resurfaced. The Court ascertained (after suitable investigation) that she should not be sanctioned for her previous noncompliance, and briefing on the Rule 12(b)(6) motion was finally completed.[3]

_____

developed (factually or legally) in any meaningful way, but are instead confined to mere offhand mention of the name of the statute or claim and a conclusory "he-harmed-me" statement that defendants are liable on that basis.

[3]     Nearly two weeks after entry of the June 8 Order (doc. 39) allowing plaintiff to be heard on the Motion to Dismiss despite her history of disregarding court orders and deadlines, plaintiff filed a document styled "Plaintiff's Reply to Defendants' Re: To Plaintiff's Response to the Court's Order to Show Cause" (doc. 42). The purported purpose of this "Reply" is the advancement of plaintiff's contention "that she would very much like the chance to prosecute her case" and that "she can and will follow the Rules and timelines." (*Id.,* ¶ 17.) As such, the Reply focuses on whether Ford should be sanctioned for noncompliance with previous orders. But this (Continued)

**II.  Analysis.**

   *A.     Legal Standard for Motion to Dismiss.*

   On a Rule 12(b)(6) motion to dismiss for failure to state a claim, "the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged … in the complaint as true." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009); *see also Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) ("In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff."); *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (similar).

   To withstand Rule 12(b)(6) scrutiny, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[] their claims across the line from conceivable to plausible."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citation omitted).  Thus, minimum pleading standards "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  As the Eleventh Circuit has explained, *Twombly/Iqbal* principles require that a plaintiff plead "enough facts to state a claim to relief that is plausible on its face," whose allegations are "enough to raise a right to relief above the speculative level."  *Speaker*, 623 F.3d at 1380 (citations omitted).  The factual content of the complaint must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citations omitted); *see also Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir.

---

bridge had already been crossed when the Reply was filed, inasmuch as the Court had already entered an Order allowing plaintiff to proceed with this litigation, despite her prolonged unresponsiveness.  Accordingly, this "Reply" is **moot**, and will not be considered within the context of the pending Motion to Dismiss and Motion for Leave to Amend, particularly given that Ford filed another, separate brief to respond to the Rule 12(b)(6) Motion.

2009) ("A plaintiff must provide enough factual allegations, which are assumed to be true, to raise a right to relief above the speculative level.").

As noted, Ford is proceeding *pro se* in this action, without assistance of counsel. Of course, her pleadings are entitled to deferential review on that basis.[4] But Ford's *pro se* status does not exempt her from complying with the Federal Rules of Civil Procedure, including Rule 8's minimum pleading requirements.[5] Furthermore, applicable precedents forbid this Court from acting as Ford's *de facto* counsel or rewriting otherwise deficient pleadings on her behalf to steer her claims past a Rule 12(b)(6) challenge. *See GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998); *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("district courts cannot concoct or resurrect arguments neither made nor advanced by the parties").

### B. Defendants' Rule 12(b)(6) Motion is Proper.

Before reaching the merits of the Motion to Dismiss, the Court first addresses Ford's objection that the Motion itself is improper. Plaintiff contends that defendants' Rule 12(b)(6) Motion should be summarily rejected because (i) defendants are "in default," in her view; and (ii) defendants previously moved for dismissal while the case was pending in California, but that court declined to dismiss the entire case when it could have done so. (Doc. 43, at 4-6 & n.3.) Both of these assertions miss the mark.

First, defendants are not in default at this time. No application for default has been filed, and no Clerk's Entry of Default has issued. Defendants are actively, vigorously defending against Ford's claims. To be sure, it appears that defendants did not initially respond to the Complaint after service of process in September 2010 within the time frame specified by the Federal Rules of Civil Procedure. But the federal judge presiding over this action in California

---

[4]       *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (*pro se* complaints are held "to less stringent standards than formal pleadings drafted by lawyers"); *Matzker v. Herr*, 748 F.2d 1142, 1146 (7th Cir. 1984) (federal district courts must ensure that *pro se* litigants are given "fair and meaningful consideration").

[5]       *See, e.g., Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (explaining that "we are to give liberal construction to the pleadings of *pro se* litigants," but that "we nevertheless have required them to conform to procedural rules") (citation omitted); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (a *pro se* party "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure"); Local Rule 83.9(b).

denied Ford's motion for default judgment via Order entered on January 6, 2011, reasoning that default judgments are disfavored, defendants' default was not attributable to culpable conduct, defendants have shown a meritorious defense, and plaintiff is not prejudiced by defendants' delay. (Doc. 23-1, at 3-6.) Pursuant to the clear terms of Judge Hayes' ruling, no default judgment was entered against defendants, and any default (had such been entered) would be properly set aside pursuant to Rule 55(c), Fed.R.Civ.P. The net result of the foregoing is that defendants are not in default; rather, they are fully entitled to participate in this litigation and to contest the merits of plaintiff's claims, just as any other litigant may do.[6]

Second, defendants have not previously litigated to resolution the issues presented in their Renewed Motion to Dismiss. The California court did not deny defendants' prior motion to dismiss (which raised many of these same issues) on the merits; rather, Judge Hayes concluded that he lacked jurisdiction to consider those arguments and therefore transferred the entire action (save the RESPA claim) to this District Court. (*See* doc. 23-1, at 9-10.) While Judge Hayes nominally denied the original motion to dismiss, he did so for reasons that would in no way foreclose defendants from renewing those arguments in a court with jurisdiction to adjudicate them. As such, defendants did not improperly take a "second bite at the apple" when they filed a Rule 12(b)(6) Motion post-transfer in this District Court to raise arguments that had never been considered on the merits by the transferor court (because that court determined that it was jurisdictionally barred from hearing them). Moreover, this motion is not untimely because the defense of failure to state a claim upon which relief can be granted is properly raised even well after the pleadings stage. *See* Rule 12(h)(2), Fed.R.Civ.P. (noting that defense of failure to state

---

[6] It is true that, under Rule 12(a)(4)(A), defendants were obliged to file a responsive pleading within 14 days after notice of the adjudication of their original Motion to Dismiss by the California court. It is also true that defendants tarried from January 6, 2011 until March 23, 2011, before filing their Renewed Motion to Dismiss. That delay is excessive; however, plaintiff did not move for default in the interim, and no default was entered. Plaintiff could have objected earlier, but she did not because she was not participating in this litigation at all during that time frame. It would be most incongruous to deem defendants in default at a time when plaintiff had, by all outward appearances, abandoned or otherwise lost interest in pursuing her claims. In any event, the Renewed Motion to Dismiss is ripe and pending now. The Court will hear it on the merits because, as explained *infra*, the arguments therein have neither been waived nor previously decided, and the defense of failure to state a claim upon which relief can be granted is properly raised at this time.

a claim on which relief may be granted may be raised in any pleading, by a motion under Rule 12(c), or at trial.[7]

## C.    Plaintiff Withdraws Certain Causes of Action.

In response to the Motion to Dismiss, Ford has prudently and properly agreed to withdraw certain of the causes of action identified in her Amended Complaint. Specifically, she concedes that she "has not pled, and cannot show" the elements of a cause of action for slander of title, joint venture liability, and quiet title. (Doc. 43, at 17-18.) On the basis of these representations, plaintiff's claims for slander of title, joint venture liability and quiet title are all **dismissed without prejudice**, and are no longer a part of this case.

## D.    Plaintiff's Previously Dismissed RESPA Cause of Action.

In her brief, plaintiff argues at some length that her claims under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.*, either are or should be still in play in this litigation. (Doc. 43, at 18-21.) Plaintiff is incorrect. As noted *supra*, Judge Hayes dismissed plaintiff's RESPA cause of action for failure to state a claim. (*See* doc. 23-1, at 12 ("The Motions to Dismiss the RESPA claim for failure to respond to the QWR are granted, and that claim is DISMISSED without prejudice.") .) Plaintiff's suggestion that the California court's ruling is invalid because it should have transferred the entire action and allowed this Court to

---

[7]        *See Sikes v. American Tel. and Tel. Co.*, 841 F. Supp. 1572, 1580 (S.D. Ga. 1993) (explaining that defendant can assert Rule 12(b)(6) defense even after pleadings are closed, and that such a maneuver "is allowed after the close of the pleadings by Rule 12(h)(2)"); *Hogan v. Provident Life & Acc. Ins. Co.*, 2009 WL 2169850, *3-4 (M.D. Fla. July 20, 2009) (where defendant filed Rule 12(b)(6) motion after answering complaint, court would consider it under Rules 12(c) and 12(h)(2), applying same legal standard it would in reviewing Rule 12(b)(6) motion); *Robert v. Abbett*, 2009 WL 902488, *17 (M.D. Ala. Mar. 31, 2009) (defense of failure to state a claim may still be raised after pleadings, as "the Court may construe the Rule 12(b)(6) as one seeking judgment on the pleadings under Fed.R.Civ.P. 12(c)"); *Alternative Delivery Solutions, Inc. v. R.R. Donnelley & Sons Co.*, 2005 WL 1862631, *4 (W.D. Tex. July 8, 2005) ("A Rule 12(b)(6) motion … may be raised post-answer, including during trial on the merits."). It bears noting, too, that defendants have not yet filed an answer, so this is not a post-pleading Rule 12(b)(6) motion. Also, plaintiff's present insistence on strict enforcement of the time limits of the Federal Rules of Civil Procedure stands in stark contrast to her own well-documented conduct in this case of missing numerous court-ordered deadlines over a four-month period. (*See* doc. 39, at 1.) Having received the benefit of the doubt for her own transgressions vis a vis particular deadlines, plaintiff cannot in equity and good conscience be heard to cry foul if a similar courtesy is extended to her adversaries.

decide the RESPA claim is misguided. Unquestionably, the California court acted well within its jurisdiction and its discretion in adjudicating the RESPA portion of the case. This Court will not disturb or revisit that ruling, merely because Ford would now prefer the RESPA claim to be adjudicated here, rather than in California.

More fundamentally, any RESPA claim that Ford might assert would be frivolous on its face for at least two reasons. First, her Amended Complaint reflects that the Units are "four condominium units" located across the country from Ford's domicile, that she does not live (and has never lived) in those Units, and that the Units are simply "rental properties" occupied by "tenants." (Doc. 4, ¶¶ 11-12, 31-33, 71.) Numerous courts have held that RESPA has no application to credit transactions for investment or rental properties.[8] Second, any action brought for a violation of RESPA must be filed within one year "from the date of the occurrence of the violation." 12 U.S.C. § 2614. The same is true under TILA and HOEPA. *See* 15 U.S.C. § 1640(e). "The date of the violation is determined based on the date of the consummation of the transaction." *Mortensen v. Mortgage Electronic Registration Systems*, 2010 WL 5376332, *9 n.28 (S.D. Ala. Dec. 23, 2010). By the terms of the Amended Complaint, the mortgage loans

---

[8] *See, e.g., Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 417 (9th Cir. 2011) (holding that where mortgages were for "non-owner-occupied rental properties," such mortgages were business-purpose loans and "RESPA does not apply to them"); *Herschelman v. New Century Mortg. Corp.*, 2010 WL 4448224, *5 (D.Haw. Oct.29, 2010) (where plaintiff's property is "primarily a rental property used for commercial purposes," plaintiff fails to state a claim for violation of TILA, HOEPA or RESPA); *Girgis v. Countrywide Home Loans, Inc.*, 733 F.Supp.2d 835, 845 (N.D. Ohio 2010) ("the remedies available under HOEPA apply only to mortgages taken out on consumer's principal dwelling," not investment properties or secondary residences); *Mauro v. Countrywide Home Loans, Inc.*, 727 F.Supp.2d 145, 155 (E.D.N.Y. 2010) ("to the extent plaintiff obtained the loans in order to further her investment in the rental properties, the loan was clearly a 'business' loan as a matter of law and, therefore, exempt from the coverage of TILA"); *Lind v. New Hope Property, LLC*, 2010 WL 1493003, *6 (D.N.J. Apr. 13, 2010) ("credit transactions to obtain non-owner-occupied rental property are similarly exempt from the requirements of RESPA" and TILA); *LaPorte v. Countrywide Home Loans, Inc.*, 2009 WL 2905934, *2 (E.D.Tenn. Sept.3, 2009) ("plaintiff in the instant action obtained the property for commercial rental purposes; RESPA and TILA therefore do not apply to the mortgage"); *Antanuos v. First Nat'l Bank of Arizona*, 508 F.Supp.2d 466, 471 (E.D.Va.2007) ("Credit transactions secured by real or personal property used for other purposes, such as commercial rental property, fall outside the scope of TILA's coverage."). The foregoing authorities would likewise preclude Ford from asserting cognizable claims relating to the Units under TILA or HOEPA.

that Ford says are violative of RESPA (and TILA and HOEPA) were consummated on or about January 3, 2008. (Doc. 4, ¶ 12.) Because the loan transaction occurred some 31 months before Ford filed her Complaint in August 2010, any claims she might attempt to assert under RESPA, TILA or HOEPA concerning the original loan transaction would be time-barred.[9]

For all of these reasons, the Court rejects Ford's attempt to re-inject RESPA claims into this action. Such claims were properly dismissed, and are no longer a part of this case.

### E. Plaintiff's Remaining Causes of Action.

As noted, the Amended Complaint sets forth a host of claims, several of which are recited as freestanding causes of action with separate headings, while others are simply listed in cursory fashion. Defendants request dismissal of all of them for failure to state a claim upon which relief can be granted, largely pursuant to *Twombly / Iqbal* principles of sufficiency of the pleading. Each freestanding claim will be considered in turn, and the others will be addressed *en masse*.

### 1. Wrongful Foreclosure.

As pleaded in the Amended Complaint, Ford's wrongful foreclosure cause of action is murky at best. For example, plaintiff repeatedly professes ignorance as to whether a foreclosure sale has even been conducted on any of the Units. (Doc. 4, ¶¶ 54-55.) She objects to problems with "quality control for those individuals and entities originating loans so that loan applications would be accurately and truthfully completed." (*Id.*, ¶ 61.) She alleges that even if defendants merely harbor a "future intent to perform a Sale Under Power," such intent is "wrongful and tortious" because "Ocwen holds no title to Plaintiff's properties." (*Id.*, ¶ 65.) She says that "Defendants have possibly completed a foreclosure proceeding against the Plaintiff in violation of law." (*Id.*, ¶ 88.)

From these and other allegations in the pleading, it is extraordinarily difficult to ascertain what Ford maintains defendants have done that constitutes a wrongful foreclosure, particularly if (as the Amended Complaint repeatedly states) plaintiff does not know whether a foreclosure sale

---

[9] To be sure, if Ford's claims are that defendants violated notice requirements such as the TILA "Notice of new creditor" provision set forth in 15 U.S.C. § 1641(g), those claims might not be time-barred. But it is far from clear that plaintiff seeks to interpose such claims here. Even if she did, such claims would remain meritless on their face because, as previously described, the statutes at issue do not reach credit transactions for investment or rental properties, as was plainly the case here.

has taken place at all. Furthermore, plaintiff admits on page 11 of her Response that a hallmark of the tort of wrongful foreclosure under Alabama law is that the power of sale must be exercised "for a purpose other than to secure the debt owed by the mortgagor." *Reeves Cedarhurst Development Corp. v. First American Federal Sav. and Loan Ass'n*, 607 So.2d 180, 182 (Ala. 1992); *see also In re Sharpe*, 391 B.R. 117, 152-53 (Bankr. N.D. Ala. 2008) (reciting guidelines for tort of wrongful foreclosure under Alabama law, under which an action lies if "(1) the actions of the mortgagee were either outside the boundaries of the foreclosure or taken for some purpose other than to secure the debt owed by the mortgagor; (2) the actions of the mortgagee were for some ulterior motive; (3) the power of sale was perverted or used for the mortgagee's or someone else's purpose; or (4) the mortgagee had an ill motive"). But the Amended Complaint says nothing about any improper purpose, ill motive, or action outside the boundaries of the applicable contract. Ford's pleading does not allege, for example, that she was not in default under the terms of the applicable mortgage loans, that the mortgage loan documents did not provide for a remedy of foreclosure in the event of default, that foreclosure was undertaken for some reason not authorized by the mortgage, or the like.

Simply put, from review of the Amended Complaint, the Court is left wondering whether there was even a foreclosure of Ford's property and, if so, how such foreclosure was "wrongful" within the meaning of applicable Alabama law. Instead, the Amended Complaint is stuffed with conclusory labels that defendants behaved wrongfully, fraudulently, illegally and so on, without specifically identifying <u>what</u> defendants allegedly did that Ford contends constitutes the Alabama tort of wrongful foreclosure. Plaintiff has not cut through the rhetoric to identify the conduct that she contends amounts to a violation. This is exactly the kind of pleading problem that the Supreme Court has deemed insufficient to withstand review under Rule 12(b). *See, e.g., Iqbal*, 129 S.Ct. at 1949 (plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *Twombly*, 550 U.S. at 555 (applicable pleading standards require "more than labels and conclusions," and courts do not "accept as true a legal conclusion couched as a factual allegation").[10] As framed, the

---

[10]     In her Response (doc. 43) to the Rule 12(b) Motion, but not in her Amended Complaint itself, Ford suggests that the factual basis for her wrongful foreclosure claim is that defendants did not have any right to receive payments under the applicable mortgage loans or to exercise foreclosure rights because they were strangers to the loan transactions. Apparently, (Continued)

wrongful foreclosure cause of action pleaded in two separate places in the Amended Complaint is inadequate to satisfy the *Twombly / Iqbal* pleading standard or to state a claim upon which relief can be granted.

### 2. *Negligence / Wantonness.*

Much the same problem attaches to the Amended Complaint's claims of negligence and wantonness. Plaintiff's pleading states that Ford's negligence claim is grounded on the notion that "Defendants negligently ejected, or caused to be ejected the tenants of at least one of Plaintiff's AL properties so far." (Doc. 4, ¶ 71.) Likewise, the Amended Complaint alleges that Ford's wantonness claim is that defendants "with reckless indifference to the consequences, consciously and intentionally acted to eject tenants from the Plaintiff's property." (*Id.*, ¶ 75.)[11] But plaintiff fails to allege facts (or to identify legal authorities) suggesting that the ejection of tenants (not Ford) from rental property would amount to a breach of duty owed to plaintiff, or that defendants owed any duty at all to her tenants. *See generally Prill v. Marrone*, 23 So.3d 1, 6

---

then, plaintiff's view is that only the original lender (the defunct Taylor, Bean & Whitaker) could foreclose on the mortgages, and that no transferee could do so. But the Amended Complaint identifies no provisions in the applicable mortgage documents that would prohibit transfer or assignment of the lender's right and security interest in the Units. More fundamentally, the Amended Complaint does not clearly specify that as the basis for the wrongful foreclosure claim. If plaintiff's claim is that defendants were not valid holders or servicers of the notes, and that they foreclosed on those Units despite being unauthorized, non-transferee strangers to the underlying loan transactions, then she has not stated as much in the pleadings so as to place defendants on notice of the nature of the claims against them.

[11] Elsewhere in the Amended Complaint, plaintiff states that "[t]he initiation of the foreclosure proceeding by Ocwen was either negligent, wanton, or both." (Doc. 4, ¶ 89.) This allegation does not save the negligence/wantonness claims under Rule 12(b)(6) for at least two reasons. First, it is included under the "Unlawful Foreclosure" heading rather than the "Negligence" or "Wantonness" headings. If plaintiff wants to base her claims of negligence or wantonness on allegations that Ocwen improperly initiated foreclosure proceedings, then she needs to plead those claims in such a manner to make that intention clear. She has not done so. Second, Ford has not alleged what was negligent or wanton about Ocwen's actions, but has simply attached a conclusory label to them. Such a method of pleading does not pass muster under *Twombly / Iqbal*. If plaintiff contends that defendants initiated foreclosure procedures in a negligent or wanton way, she must plead specific facts showing the basis for her claims of negligence and wantonness, so as to move her claims out of the realm of the speculative and into the realm of the plausible.

(Ala. 2009) ("The elements of a negligence claim are a duty, a breach of that duty, causation, and damage.") (citation omitted); *Lilya v. Greater Gulf State Fair, Inc.*, 855 So.2d 1049, 1056 (Ala. 2003) ("Without the existence of a duty, [plaintiff]'s negligence and wantonness claims fail as a matter of law ....").[12]

In her Response brief, plaintiff suggests that the real nature of her negligence and wantonness claims is defendants' failure to respond to her Qualified Written Requests to validate the debt and the identity of the payee for her loan payments. (Doc. 43, at 16-17.) But her Amended Complaint does not identify these events as the factual predicate of her negligence and wantonness causes of action. (*See* doc. 4, at 19-20.) Plaintiff cannot use her brief on a Rule 12(b) Motion as a vehicle to replead her Amended Complaint in a manner that corrects defects identified by that Motion. As pleaded, her negligence and wantonness claims (focused as they are on allegations of negligent/wanton ejectment of tenants) do not state a claim upon which relief can be granted.

### 3. *Unjust Enrichment.*

The Amended Complaint alleges a claim of unjust enrichment predicated on allegations that defendants' possible foreclosure of plaintiff's Units "resulted in defendants being unjustly enriched by the payment of fees, insurance proceeds and equity in the properties." (Doc. 4, ¶ 92.) Defendants' Rule 12(b)(6) Motion correctly points out that these contentions fall short of the legal threshold for an unjust enrichment claim. Such a claim requires proof that defendants hold funds that in equity or good conscience belong to plaintiff, or that were procured because of mistake or fraud. *See, e.g., Hancock-Hazlett General Const. Co. v. Trane Co.*, 499 So.2d 1385, 1387 (Ala. 1986) ("The essence of the theories of unjust enrichment or money had and received is that a plaintiff can prove facts showing that defendant *holds* money which, in equity and good

---

[12] In her Response, Ford argues that the defendants' ejection of tenants was wrongful under the "Protecting Tenants at Foreclosure Act of 2009." (Doc. 43, at 17.) This citation does not bolster plaintiff's cause. In the first place, this contention does not show how defendants breached any duty owed to Ford (as opposed to her tenants, who are not named plaintiffs). In the second place, numerous courts have declared that the referenced statute does not create a private right of action of the kind that Ford might pursue here. *See, e.g., Wells Fargo Bank v. Lapeen*, 2011 WL 2194117, *1 (N.D. Cal. June 6, 2011) ("the PTFA only provides tenants with federal defenses to eviction but does not create a federal ejectment claim or any private right of action").

conscience, belongs to plaintiff or *holds* money which was improperly paid to defendant because of mistake or fraud."). Why would the unspecified "fees" and "insurance proceeds" of which Ford complains belong to her in equity or good conscience? What facts support an assertion that defendants unjustly took plaintiff's equity in the Units? On what factual basis does she contend that any of these amounts were paid to defendants because of mistake or fraud? The Amended Complaint does not say, leaving the Court guessing as to the factual basis for this cause of action, which in its present form falls well short of *Twombly / Iqbal* pleading standards. What's more, plaintiff's Response is silent as to the unjust enrichment claim. Plaintiff has failed even to attempt to rebut defendants' arguments for dismissal of this claim. Rule 12(b)(6) relief is plainly appropriate here.

### 4. *Conspiracy.*

The Amended Complaint also purports to set forth a civil conspiracy claim against defendants, based on allegations that defendants "engaged in an unlawful combination and conspiracy to foreclose on mortgage loans against Plaintiff for the purpose of unjustly enriching themselves." (Doc. 4, ¶ 96.) As defendants observe, under Alabama law, a civil conspiracy claim is cognizable only insofar as the underlying tort cause of action is actionable. *See, e.g., Prill*, 23 So.3d at 11 ("A plaintiff alleging a conspiracy must have a valid underlying cause of action.") (citation omitted); *Hooper v. Columbus Regional Healthcare System, Inc.*, 956 So.2d 1135, 1141 (Ala. 2006) ("The gist of an action alleging civil conspiracy is not the conspiracy itself but, rather, the wrong committed," and "if the underlying wrong provides no cause of action, then neither does the conspiracy.") (citations omitted).

Here, Ford appears to allege in the pleadings that the object of defendants' conspiracy was unjust enrichment. But for the reasons stated above, the Amended Complaint as framed does not state a claim for unjust enrichment. If the underlying tort claim fails, then the conspiracy claim necessarily meets the same fate. In response to defendants' request that the conspiracy claim be dismissed on precisely this basis, plaintiff states in the vaguest of terms that she "believes that she has in fact properly pled the conspiracy count." (Doc. 43, at 18.) Such a blanket statement of plaintiff's subjective belief is not good enough, particularly when confronted with the above-described deficiencies in the unjust enrichment claim, which is after all the underlying wrong on which the conspiracy claim rests. In its current configuration, the conspiracy claim cannot withstand scrutiny under Rule 12(b)(6).

### 5.    *Breach of Fiduciary Duty.*

Plaintiff's claim for breach of fiduciary duty, as presented in the Amended Complaint, is in equal parts bewildering and inscrutable.  She alleges that the fiduciary duties in question included "the duty to complete the Loan Application accurately, to disclose to the Plaintiff all material facts concerning the Plaintiff's mortgage loan and settlement process, and to disclose all transactions whereby the lender would itself benefit from the principal/agent relationship." (Doc. 4, ¶ 100.)  What does any of this have to do with the facts of this case?  At best, these allegations might relate to plaintiff's dissatisfactions with the original lender, a non-party which she identifies elsewhere in the Amended Complaint as Taylor, Bean & Whitaker.  There are no facts in the Amended Complaint suggesting that any of the named defendants failed to complete her loan application properly, to disclose to her facts about the mortgage loan settlement process, or to disclose transactions whereby "the lender would itself benefit" from an unspecified "principal/agent relationship."  To put it plainly, the Court cannot discern what plaintiff is talking about here.  The next sentence is no better because it seeks to bootstrap "RESPA, CRESPA [an acronym that plaintiff neither defines nor explains anywhere in her pleading] and TILA" claims under a breach of fiduciary duty rubric.  (*Id.*, ¶ 101.)  Such an allegation is far too conclusory to satisfy minimum pleading standards under the Federal Rules of Civil Procedure.  Moreover, plaintiff's Response to the Rule 12(b)(6) Motion does not mention the breach of fiduciary duty claim at all, such that plaintiff has not even attempted to respond to these identified defects in her pleading.  As postured, this claim cannot survive.

### 6.    *Other Statutory / Common Law Claims.*

As recognized *supra*, in addition to these specific claims, Ford has endeavoured to hedge her bets in the Amended Complaint by listing a vast array of statutory and common-law theories of liability, lumping them all together in conclusory, undifferentiated fashion.[13]  Such a cursory

---

[13]     In particular, the Amended Complaint includes a statement that Ford seeks to recover from defendants under "Regulation X …, the Truth in Lending Act .. and the implementing Regulation Z …; the Federal Mail Fraud Act …; the Federal Wire Act …; Bank Fraud …; and other state common law causes of action for Actual Fraud, Constructive Fraud, Fraud in the Inducement, Fraud in the Factum, Fraud in the Execution, Breach of Contract, Gross Negligence, Lender Negligence, …, Negligent Acceptance, Negligent Training, …, and others." (Doc. 4, at 2.)  Elsewhere, a solitary sentence in the Amended Complaint accuses defendants of violating RICO in ill-defined ways.  (*Id.*, ¶ 23.)  Another paragraph contains a threadbare (Continued)

laundry list of names of claims, with no factual deliberation or elaboration, is both unhelpful and manifestly improper under *Twombly / Iqbal* and Rule 8 of the Federal Rules of Civil Procedure. It is also a textbook example of an impermissible shotgun pleading. *See, e.g., Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 n.22 (11th Cir. 2010) ("The complaint was a typical 'shotgun' pleading, in that each count incorporated by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged were not material to the claim, or cause of action, appearing in a count's heading. This circuit condemns shotgun pleadings."); *Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 905 (11th Cir. 1996) (lamenting complaint that was "framed in complete disregard of the principle that separate, discrete causes of action should be plead in separate counts") (citation omitted); *Anderson v. District Bd. of Trustees of Cent. Florida Community College*, 77 F.3d 364, 366-67 (11th Cir. 1996) (finding that failure to "present each claim for relief in a separate count, as required by Rule 10(b)," constitutes shotgun pleading and undermines the court's ability to administer justice). Finally, plaintiff's lumping together of well over a dozen causes of action in a single paragraph of her Amended Complaint runs afoul of Rule 10(b), Fed.R.Civ.P., which generally requires that each claim be stated in a separate count. A federal litigant cannot simply recite in her Complaint every statute or common-law claim she can think of, and leave it the opposing party and the courts to figure out months or years down the road what nexus (if any) those bare labels have to the facts and circumstances of the case.

In light of these numerous grave defects, the laundry list of undeveloped claims recited on page 2 and in the Prayer for Relief of the Amended Complaint is utterly improper and is subject to dismissal under Rule 12(b)(6).

---

allegation of an unspecified violation of unspecified sections of the Uniform Commercial Code. (*Id.*, ¶ 22.) In the "Prayer for Relief" section of the Amended Complaint, Ford for the first time states a desire that the Court find defendants' actions "to be unfair and deceptive business practices in Violation of Alabama and California law" and "in violation of the Federal Debt Collection Practices Act." (*Id.* at 26.) None of these numerous statutory and common-law legal theories are mentioned anywhere else in the Amended Complaint, with anything approaching the requisite level of detail and specificity.

### F.      Leave to Amend Complaint.

In apparent recognition of the likelihood that portions of her pleading would be deemed inadequate under Rule 12(b)(6), Ford filed a Motion for Leave to Amend Complaint (doc. 40). The Motion was not accompanied by a proposed Second Amended Complaint, nor does the Motion itself identify how or in what particulars she desires to amend her pleading.[14]

Nonetheless, it is well established that a plaintiff (and especially a *pro se* plaintiff) should be afforded at least one opportunity to amend her pleadings if a more carefully drafted complaint might state a claim upon which relief can be drafted.  *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) ("Generally, where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.") (citation omitted); *Spear v. Nix*, 2007 WL 215859, *5 (11th Cir. Jan. 29, 2007) (if amendment would not be futile, *pro se* plaintiff "must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice"); *see generally Harris v. Hancock Bank*, 2011 WL 1435500, *3 n.5 (S.D. Ala. Apr. 14, 2011) (where "a more carefully drafted complaint might state viable claims … the interests of fairness and equity militate in favor of dismissing these claims without prejudice to plaintiffs' ability to file a timely motion to amend their pleading to correct these defects").

Any RESPA, TILA and HOEPA claims set forth in the Amended Complaint are plainly unavailable to Ford as a matter of law, both for the reasons stated in the California court's pre-transfer ruling and in for those set forth in Section II.D. of this Order.  Amendment of the pleadings to reassert such causes of action would be futile.  Also, the Court will hold plaintiff to her representations that she agrees to withdraw her claims for slander of title, joint venture liability, and quiet title.  All of these claims are **dismissed**, and plaintiff may not amend her complaint to replead these causes of action.

---

[14]      Three months after filing her Motion, plaintiff abruptly filed a Second Amended Verified Complaint (doc. 46) without leave of court.  Nothing in this document reflects that it is a proposed Amended Complaint, and it was filed as a freestanding pleading rather than as an exhibit to the Motion to Amend.  The correct procedure under Rule 15(a)(2), Fed.R.Civ.P., is to attach the proposed pleading as an exhibit to the motion for leave to amend, rather than unilaterally filing an amended pleading without waiting for a ruling on a previously filed Motion to Amend.  In light of this defect, the Second Amended Complaint (doc. 46) is **stricken** because it was filed improperly and without leave of court.

As to any other claims that she may wish to plead or replead, Ford will be granted an opportunity to do so. On this record, the Court cannot say categorically that a more carefully drafted complaint could not state an actionable claim. Several caveats are in order. In her forthcoming Second Amended Complaint, Ford must strictly comply with the requirements of *Twombly* and *Iqbal*, as described in Section II.A. of this Order. Simply listing every possibly relevant cause of action, legal theory, or statute that she can think of or locate in her research is not an acceptable pleading practice. Rather, Ford must provide specific facts in support of each claim. She must identify specifically what she claims defendants did to violate her rights. Moreover, plaintiff is expected to conduct sufficient factual inquiry as to defendants' actions that she is not simply guessing or hypothesizing as to, for example, whether any of her Units have been foreclosed on. Such information should be readily available to her upon reasonable investigation. Conjectural allegations that "maybe defendants did this" or "perhaps defendants did that" are not acceptable, and do not raise any right to relief beyond the speculative level.[15] Similarly, stringing together a list of buzzwords or catchphrases is not enough to state a cognizable claim.

For each cause of action she wishes to pursue, Ford must allege in a separate count the supporting facts specific to that claim, without conclusory labels. The Second Amended Complaint should specify, for each claim identified, what defendants did to become liable to her on that legal theory. Plaintiff must not file another shotgun pleading. She must not leave the Court and opposing counsel guessing as to how she claims defendants have wronged her. Given the considerable toll that such motions take on scarce judicial and litigant resources, Ford should not assume that she will receive further opportunities to amend her pleadings incrementally if this Second Amended Complaint is inadequate. Now is the time for her to correct her pleading. Finally, plaintiff is strongly encouraged to consult with counsel before filing an amended

---

[15]     That is not to say, of course, that plaintiff may recklessly allege with certitude any facts she wants, even if she lacks a good-faith reason to believe that they are true. *See* Rule 11(b)(3), Fed.R.Civ.P. ("By presenting to the court a pleading, … an attorney or ***unrepresented party*** certifies that to the best of the person's knowledge, information, and belief, ***formed after an inquiry reasonable under the circumstances*** … the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.") (emphasis added).

pleading. This Court cannot and will not act as her stand-in counsel or repair any defects that may exist in any subsequent pleading she may file.

III.    **Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1.     Plaintiff's Motion to File Out of Time Response (doc. 41) and the document styled "Plaintiff's Reply to Defendants' Re: To Plaintiff's Response to the Court's Order to Show Cause" (doc. 42) are both **moot**;

2.     Defendant's Renewed Motion to Dismiss (doc. 29) is **granted in part,** and **denied in part**;

3.     Any and all claims that plaintiff has asserted under RESPA, TILA, HOEPA, or theories of slander of title, joint venture liability, and quiet title are **dismissed**;

4.     Although the Amended Complaint fails to state a claim upon which relief can be granted, the Motion to Dismiss is **denied without prejudice** as to all claims other than those specified in the preceding paragraph;

5.     Plaintiff's Second Amended Verified Complaint (doc. 46), which was filed without leave of court, is **stricken**;

6.     In lieu of dismissing this action in its entirety, the Court **grants** plaintiff's Motion for Leave to Amend Complaint (doc. 40) to afford her an opportunity to correct the enumerated defects;

7.     On or before **October 26, 2011**, plaintiff must file her Second Amended Complaint, failing which this action will be dismissed in its entirety because the existing pleading is defective under Rules 8 and 12(b)(6); and

8.     Defendants' Rule 12(b) motion or responsive pleading must be filed not later than **14 days** after the filing of plaintiff's Second Amended Complaint.

DONE and ORDERED this 5th day of October, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE